UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

SIMONE CLARKE,

                          Plaintiff,                        COMPLAINT

       -against-

                                                      18 CV

NEW YORK CITY DEPARTMENT OF
EDUCATION; CLAUDETTE CHRISTIE,        JURY TRIAL DEMANDED
PRINCIPAL OF WATCH HIGH SCHOOL,

                        Defendants.

---

Plaintiff **SIMONE CLARKE**, by and through her attorneys GLASS KRAKOWER LLP, as and for her Complaint, alleges as follows:

### PRELIMINARY STATEMENT

1. Plaintiff former Assistant Principal Simone Clarke brings this lawsuit seeking recovery against Defendants New York City Department of Education and her former Principal Claudette Christie for Defendants' violations of Title VII of the 1964 Civil Rights Act, as amended, 42 U.S.C. § 2000e, *et seq.* ("Title VII" or "Pregnancy Discrimination Act"), including Title VII's anti-retaliation provisions, the New York State Human Rights Law ("NYSHRL"), N.Y. Exec. Law §§ 290 *et seq.*, and the New York City Human Rights Law ("NYCHRL"), N.Y. Admin Code §§8-107 *et seq.*

2. Plaintiff received an Unsatisfactory annual review, experienced a hostile work environment, was terminated from her employment and denied completion of probation with the NYCDOE as an Assistant Principal due to her pregnancy, and in retaliation for filing a complaint against her school administration with the New York City Commission of Human Rights.

1

3. This action seeks declaratory and equitable relief, compensatory damages, punitive damages, and attorney fees.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over Plaintiff's Title VII claim pursuant to 28 U.S.C. § 1331.

5. This Court has subject matter jurisdiction over Plaintiff's NYSHRL and NYCHRL claims pursuant to 28 U.S.C. § 1332.

6. This action properly lies in the Eastern District of New York, pursuant to 28 U.S.C. § 1391, because the discriminatory and retaliatory events took place within this District and Plaintiff resides within this District.

## ADMINISTRATIVE PROCEEDINGS

7. Plaintiff has complied with all of the administrative procedures that are conditions precedent to the filing of this lawsuit.

8. The U.S. Equal Opportunity Employment Commission ("EEOC") has issued Plaintiff a Right to Sue Letter, dated January 18, 2018, which letter is attached as Exhibit A to this Complaint.

## THE PARTIES

9. Plaintiff SIMONE CLARKE is a resident of the City of New York in the County of Kings and the State of New York.

10. At all times relevant herein, Defendant NEW YORK CITY DEPARTMENT OF EDUCATION (formerly known as the New York City Board of Education and hereinafter "NYCDOE") is a school district within the City and State of New York.

11. At all times relevant herein, Defendant NYCDOE is a city school district established pursuant to Title II, Article-52-A of the New York State Education Law, NY Educ. Law Section 2590 *et seq*, and an "employer" as defined by Title VII, 42 U.S.C. § 2000e(b).

12. At all times relevant herein, Defendant Claudette Christie was the Principal of the World Academy for Total Community Health ("WATCH") High School in Brooklyn, New York.

**FACTUAL ALLEGATIONS**

13. Plaintiff began her career with Defendant NYCDOE in September 1999, as a teacher of mathematics.

14. Plaintiff continued working as a teacher for Defendant NYCDOE until the end of the 2003-04 school year, at which time she relocated to Atlanta, Georgia.

15. In Atlanta, Plaintiff taught as a teacher of mathematics until the end of the 2007-08 school year.

16. Plaintiff then relocated back to New York City, where she resumed teaching as a teacher of mathematics for Defendant NYCDOE until the end of the 2010-11 school year.

17. Plaintiff took a childcare leave of absence during the 2011-12 school year because she had a child.

18. For the 2012-13 school year, Plaintiff was appointed as an Assistant Principal (hereinafter "AP") at High School for Law Advocacy and Community Justice at the Martin Luther King campus in Manhattan, New York.

19. Plaintiff received a Satisfactory Annual Professional Performance Review (hereinafter "APPR") for the 2012-13 school year.

20. At the end of the 2012-13 school year, Plaintiff was excessed from her position as an Assistant Principal.

21. Plaintiff then took a childcare leave of absence during the 2013-14 school year.

22. For the 2014-15 school year, Plaintiff taught as a teacher of mathematics at a charter school in the Bronx, New York.

23. In May 2015, Plaintiff returned to the NYCDOE when she was hired as an Assistant Principal of Administration (AP), as well the supervisor for the mathematics, science and special education departments, at the World Academy for Total Community Health ("WATCH") High School in Brooklyn, New York, by Principal Claudette Christie.

24. Upon beginning as an AP during the 2015-16 school year, Plaintiff performed her duties in a satisfactory manner.

25. The administration conveyed to Plaintiff her working hours in writing at the beginning of the school year to be 8:00 AM to 4:00 PM.

26. Despite her working hours being until 4:00 PM, Plaintiff routinely stayed at school past 4:00 PM.

27. In or around October 2015, Plaintiff became pregnant, and in or around late November 2015, Plaintiff learned of her pregnancy.

28. In or around December 2015, Plaintiff informed Principal Christie that she was pregnant.

29. In or around December 2015 or January 2016, after informing Principal Christie that she was pregnant, Principal Christie began telling Plaintiff that she was "not working as hard" and "was not as efficient", or words to that effect, since she became pregnant.

4

30. On approximately two occasions, Principal Christie told Plaintiff that she was becoming, in sum and substance, "fat."

31. In or around January 2016, Principal Christie stated words to the effect to Seldon Jefferson, attendance teacher, that Plaintiff was "pregnant and forgetful."

32. In or around December or early January 2016, Principal Christie started accusing Plaintiff of arriving late to work, when in fact Plaintiff was arriving to work on time.

33. Notably, Plaintiff, after she became pregnant, continued to arrive to work at the same time as she had been arriving prior to her pregnancy.

34. On or about January 7, 2016, Principal Christie directed Plaintiff to begin punching into school for timekeeping purposes.

35. As Plaintiff was the only staff member at WATCH High School required to punch in for timekeeping purposes, she complained to her union, the Council of School Supervisors and Administrators ("CSA"), on or about January 20, 2016.

36. After learning of Plaintiff's complaint to the CSA, Principal Christie called Plaintiff into her office and stated words to the effect that she felt betrayed that Plaintiff involved the CSA and that she expected her staff to come to speak to her "face-to-face" when they had issues.

37. Principal Christie also said that she had had a bad experience with a former pregnant AP whose employment she had terminated.

38. In response, Plaintiff stated that she did not feel comfortable discussing this, but that she did not want this to become an issue between her and Principal Christie.

39. In reply, Principal Christie stated words to the effect that it had already become an issue and that she would be setting up a meeting with Plaintiff and her union representative.

40. On or about January 22, 2016, Plaintiff met with Principal Christie for a meeting with Plaintiff's union representative, Millie Boyce.

41. During this meeting, Principal Christie stated that Plaintiff no longer had to clock in upon arrival, but that her arrival time would be moved up to 7:45 AM from 8:00 AM, which had been Plaintiff's arrival time since she began her employment at WATCH High School.

42. Following this directive, which Plaintiff considered discriminatory and inequitable treatment as well as a violation of her contract, Plaintiff attempted to arrive to work at 7:45 AM.

43. In or around February or March 2016, Principal Christie made changes to Plaintiff's workspace without any justification. Specifically, two part-time staff members were directed to sit in Plaintiff's workspace.

44. In or around March 2016, Principal Christie called Plaintiff out of a meeting that Plaintiff was holding with several staff members because she "did not like that [Plaintiff] was leaning back in her chair and rubbing her belly, gossiping," or words to that effect.

45. On or about April 1, 2016, Principal Christie conducted a meeting with Plaintiff, along with her union representative.

46. During this meeting, Plaintiff requested her original 8:00 AM arrival time.

47. In response, Principal Christie stated that she could arrive to work at 8:00 AM, but that she would have to clock in again.

48. On or about April 15, 2016, Principal Christie unjustifiably issued Plaintiff a letter to file.

49. In or around April 2016, Principal Christie mocked Plaintiff's pregnancy by rising out of her seat in the main office or lobby area with mock difficulty and stating, "Here comes

Mrs. Clarke now," while rubbing her belly and following Plaintiff in a waddling manner. Other staff were present and witnessed Principal Christie's behavior towards Plaintiff.

50. In or around May 2016, Principal Christie informed Plaintiff that she could no longer use the bathroom located on the fifth floor, where Plaintiff's bathroom was located, and that she would have to use a bathroom located on the third floor. Upon information and belief of Plaintiff, Principal Christie was aware that Plaintiff needed to use the bathroom frequently due to her pregnancy and allowed other staff members to continue to use the fifth-floor bathroom.

51. In response, on or about May 20, 2016, Plaintiff asked Principal Christie if she could provide an accommodation to Plaintiff for her pregnancy so that she could use the fifth-floor bathroom. In reply, Principal Christie stated, in sum and substance, "Do you want me to pick up the bathroom and move it to you?"

52. On or about June 8, 2016, Principal Christie unjustifiably issued Plaintiff a second disciplinary letter to file.

53. In addition, on June 8, 2016, after receiving the aforementioned disciplinary letter to file, Plaintiff met with Principal Christie for her year-end conference.

54. During this conference, Principal Christie stated that she would be issuing Plaintiff an "Unsatisfactory" APPR for the 2015-16 school year.

55. Principal Christie also asked Plaintiff to submit to her a breastfeeding schedule, including when and how frequently Plaintiff planned to pump when she returns from maternity leave the following year.

56. Notably, Plaintiff at no point was planning on taking maternity leave.

57. Upon receiving the "Unsatisfactory" APPR for the 2015-16 school year, Plaintiff requested a hearing to appeal her rating.

7

58. In or around July 2016, Plaintiff filed a complaint based on pregnancy discrimination with the New York City Commission on Human Rights, naming Principal Christie as a Defendant.

59. Plaintiff bore her child on July 17, 2016.

60. Plaintiff returned to WATCH High School for the 2016-17 school year and reported for duty for the school's cabinet meeting on or about August 29, 2016.

61. During this meeting, Principal Christie discussed Plaintiff's lactation schedule and informed Plaintiff that her hours would be changed from 7:45 AM to 3:45 PM.

62. Over the next several months, in retaliation for Plaintiff's filing of her City of New York Commission on Human Rights Complaint, Principal Christie issued Plaintiff several disciplinary letters to file.

63. On December 23, 2016, Plaintiff received a letter from Superintendent Donald Conyers, informing her that the Superintendent would be reviewing and considering whether her services as a probationer be discontinued as the close of business January 23, 2017.

64. In response, Plaintiff submitted a written response to the Superintendent, dated January 15, 2017.

65. Ultimately, on January 23, 2017, Defendants denied Plaintiff's Certification of Completion of Probation, and she was discontinued as an AP, which caused her to be taken off payroll from the NYCDOE.

## **FIRST CLAIM FOR RELIEF**

**(Sex and Pregnancy Discrimination and Retaliation in Violation of Title VII)**

66. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

67. At all times relevant to this Complaint, Defendants were and are employers as that term is defined by Title VII, 42 U.S.C. § 2000e(b).

68. Plaintiff is a woman and belongs to a group protected by Title VII.

69. Plaintiff was pregnant and belongs to a group protected by Title VII.

70. Plaintiff was subject to substantial and persistent unequal treatment on the basis of her sex and pregnancy.

71. Discrimination on the basis of sex/gender is actionable under Title VII.

72. Plaintiff was subject to adverse employment actions, including being issued an Unsatisfactory APPR, letters to file, and being discontinued from her probationary assignment, due to her sex and pregnancy.

73. Plaintiff experienced a hostile work environment due to her sex and pregnancy.

74. The harassment was sufficiently severe or pervasive to materially alter the terms and conditions of Plaintiff's employment and to create a discriminatorily abusive working environment.

75. Defendants retaliated against Plaintiff after she filed a complaint with the City of New York Commission on Human Rights.

76. Defendants were aware of, and are directly and vicariously responsible for, such harassment and discrimination.

77. Defendants failed to exercise reasonable care to prevent and correct promptly any harassing behavior based on sex and pregnancy.

78. In taking the above described discriminatory actions, Defendants acted with malice and reckless indifference to Plaintiff's rights pursuant to Title VII, giving rise to punitive damages.

79. As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation.

## SECOND CLAIM FOR RELIEF
**(Sex and Pregnancy Discrimination and Retaliation in Violation of the NYSHRL)**

80. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

81. Based upon the foregoing, Defendants deliberately, intentionally and willfully violated the New York State Human Rights Law by issuing her unwarranted letters to file, negative evaluations, an Unsatisfactory APPR, and discontinuing her employment.

82. Defendants retaliated against Plaintiff for filing a complaint with the City of New York Commission on Human Rights.

83. As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation.

## THIRD CLAIM FOR RELIEF
**(Sex and Pregnancy Discrimination and Retaliation in Violation of the NYCHRL)**

84. Plaintiff repeats and realleges all the preceding paragraphs of this Complaint, as if fully set forth herein.

85. Based upon the foregoing, Defendants deliberately, intentionally and willfully violated the New York City Human Rights Law by issuing her unwarranted letters to file, negative evaluations, an Unsatisfactory APPR, and discontinuing her employment.

86. Defendants retaliated against Plaintiff for filing a complaint with the City of New York Commission on Human Rights.

87. As a direct and proximate result of Defendants' aforementioned discriminatory conduct, Plaintiff suffered monetary damages, as well as humiliation, emotional distress, mental anguish and suffering, and damage to her professional reputation

## JURY DEMAND

Plaintiff demands a trial by a jury on all of the triable issues of this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff prays that judgment be entered on her behalf in accordance with the above claimed causes of action and requests the following:

    A.    All compensatory and economic damages;

    B.    All reasonable expenses incurred by Plaintiff, including court costs and other relief, both in law and equity, to which Plaintiff may show herself justly entitled;

    C.    Attorneys' fees;

    D.    Punitive and statutory damages as authorized by statute;

    E.    Pre-judgment and post-judgment interest; and

    F.    Such further relief as the Court finds just and proper.

Dated: New York, New York
March 26, 2018

**GLASS KRAKOWER LLP**
Attorneys for Plaintiff
100 Church Street, 8th Floor, Suite 800
New York, NY 10007
(212) 537-6859

By: ____s/ _____
      Bryan D. Glass, Esq.