Bryan Glass
Jordan Harlow
**GLASS & HOGROGIAN LLP**
85 Broad Street
18th Floor – WeWork
New York, NY 10004
Telephone: (212) 537-6859
Fax: (845) 510-2219

*Attorneys for Plaintiff Simone Clarke*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------x    **18-CV-1850 (NGG) (JO)**
**SIMONE CLARKE,**



                              **Plaintiff,**

                              **-against-**

**NEW YORK CITY DEPARTMENT**
**OF    EDUCATION,    CLAUDETTE**
**CHRISTIE, PRINCIPAL OF WATCH**
**HIGH SCHOOL,**



                              **Defendants.**
-------------------------------------------------------x


      **RULE 56.1 COUNTER STATEMENT TO DEFENDANTS' STATEMENT OF**
**UNDISPUTED FACTS AND PLAINTIFF'S RULE 56.1 STATEMENT OF UNDISPUTED**
                                    **FACTS**

      Plaintiff Simone Clarke respectfully submits this Counter Statement of Material Facts

pursuant to Rule 56.1 of the Federal Rules of Civil Procedure, as to which she contends there are

genuine issues to be tried:

1

1.    Plaintiff, Simone Clarke, [sic] probationary Assistant   Principal   formerly employed within  the New  York  City Department of Education ("DOE") 1,  brings  this action pursuant  to Title  VII of the Civil  Rights  Act of 1964,  as amended, 42 U.S.C.  §§ 2000e,  et seq., the New  York  Human  Rights  Law,  N.Y.  Exec. L. §§ 296, et seq.  ("SHRL"); and the New York City Human  Rights  Law, N.Y.C.  Admin.  Code§§ 8-101,  et seq. ("CHRL").

**Response:**  Not disputed.

2.  Plaintiff   alleges   that   she   experienced   discrimination   based   on   her pregnancy and sex/gender  in the form  of excessive scrutiny  and  verbal  harassment, disciplinary letters   to file, an "Unsatisfactory" performance rating,  and  termination  of her  probationary employment.   Plaintiff   further   alleges   that   her   termination   was   in retaliation  for  filing a complaint of pregnancy  discrimination with  the New  York  City  Commission on Human Rights ("NYCCHR").  *See* Complaint. Ex. A .

**Response:** Not disputed.

3.   Plaintiff filed a charge of discrimination and retaliation with the CCHR on or about June 7, 2016.  *See* CCHR Charge, Ex. B.

**Response:** Not disputed.

4.    Plaintiffs [sic] CCHR Charge alleges that she was discriminated against on the basis of her sex and pregnancy, and retaliated against for requesting a reasonable accommodation for her pregnancy.  Id.

**Response:** Not disputed.

5.    DOE filed an Answer to plaintiffs [sic] CCHR Charge on or about December 15, 2016. *See* CCHR Answer, Ex. C.

**Response:** Disputed to the extent the charge is dated December 15, 2016, but unclear when actually filed.

6.    The CCHR issued plaintiff a Notice of Administrative Closure on or about November 14, 2017. *See* Administrative Dismissals, Ex. D.

**Response:** Not disputed.

7.    Plaintiffs (sic) CCHR Charge was dually filed with the United States Equal Employment Opportunity Commission ("EEOC"), which sent plaintiff a letter of Dismissal and Notice of Suit Rights, dated January 18, 2018. *See* Administrative Dismissals, Ex. D.

**Response:** Not disputed, except to add that Plaintiff requested this Notice of Right to Sue letter from the EEOC to initiate this federal action.

8.    On or about March 10, 2017, plaintiff filed a Notice of Claim with the DOE, alleging pregnancy discrimination and retaliation. *See* Notice of Claim, Ex. E, at 1 and 4; 50-h Transcript, Ex. F, at 47-48.

**Response:** Not disputed.

9.    Plaintiff commenced this action on March 27, 2018. *See* Complaint, Ex. A.

**Response:** Not disputed that Plaintiff's federal complaint was filed on that date.

A.      **Background**

10.     Plaintiff began her employment with the DOE on or about September 7, 1999 as a regularly assigned substitute teacher. *See* Employee Service History, Ex. G.

**Response:** Not disputed.

11. Plaintiff obtained a teaching license in Grade 7 through 12 education, and a license in administration from the New York State Education Department ("SED"). *See* Pl. Dep. at 7-10, Ex. H.

**Response:** Not disputed.

12.     For the 2012-13 school year, plaintiff was appointed as interim Assistant Principal ("AP") of the High School for Law Advocacy and Community Justice ("LACJ High School") in Manhattan, New York. *See* Employee Service History, Ex. G.

**Response:** Not disputed.

13.     Plaintiff was terminated from DOE, effective August 26, 2013, for failure to maintain a valid teaching certificate. *See* Employee Service History, Ex. G; LACJ Termination Letter, Ex. I.

**Response:** Disputed as irrelevant and misleading. Plaintiff was excessed from an Assistant Principal position at the end of June 2013 at the High School for Law, Advocacy, and Community Justice, as this AP position was eliminated due to budgetary reasons, and she did not have any performance issues in this AP position.

4

B.     **Plaintiff's Hire as AP of Administration at WATCH High School**

14.     In or around October 2013, DOE hired Christie to be Principal of the World Academy for Total Community Health High School ("WATCH HS"), located at the DOE's Thomas Jefferson High School Campus, in Brooklyn, NY. *See* Christie Dep., Ex. J, at 7-8.

**Response:** Not disputed.

15.    Plaintiff became acquainted with defendant Claudette Christie ("Principal Christie") in or around 2010 when both interviewed for an administrator position at a Brooklyn high school. *See* CCHR Answer at 3, Ex. C; Christie Dep. at 34-40, Ex. J.

**Response:** Not disputed.

16.    In or around Summer 2015, Principal Christie hired plaintiff as the Interim Assistant Principal of Administration (Interim AP) of WATCH HS. *See* CCHR Answer, Ex. C; Christie Dep. at 55-56, 58-60, Ex. J.

**Response:** Disputed to the extent that Plaintiff was hired on May 5, 2015.

17.    Principal Christie did not perform a thorough reference check of plaintiff or her claimed credentials before extending plaintiff an offer of employment. *See* CCHR Answer, Ex. C; Christie Dep. at 59-61, Ex. J.

**Response:** Disputed. Principal Christie stated at her deposition that she had many other candidates for the position who were considered for the position and she had an interview process

with other candidates for the position after which Christie hired Plaintiff. *See* Christie Deposition at 59-60, Ex. 1 to Glass Declaration in Support of Plaintiff's Opposition to Defendants' Motion (all numbered exhibits referenced herein are attached to Glass Declaration).

18. During May and June 2015, plaintiff worked part-time at WATCH HS attending to graduation matters and attending training for administrators. Principal Christie was required to evaluate plaintiff's performance for May and June 2015, and issued plaintiff a "Satisfactory" rating. *See* Christie Dep. at 66-72. Ex. J.

**Response:** Disputed as Plaintiff worked ***full time*** as an interim acting Assistant Principal in May and June 2015 as per a posting for the position. *See* Christie Dep. at 55 – 56, 59- 61, Ex. 1.

19. On or about September 2, 2015, plaintiff submitted to DOE an electronic application to fill the permanent AP Administration position. *See* WATCH HS Application, Ex. K at 4.

**Response:** Not disputed, and further noting that Principal Christie told Plaintiff to complete the application and apply for the position. *See* Christie Dep. at 23, Ex. 1.

20. In her application, plaintiff claimed to have a "wide range of experience," including "classroom and lab instruction, course and curriculum development and conflict resolution skills." *See* WATCH HS Application, Ex. K at 5-7.

**Response:** Disputed to the extent that what Plaintiff allegedly "claimed" on her application was in fact true.

6

21.   Plaintiff formally interviewed with Principal Christie for the permanent AP
Administration position twice.  *See* WATCH HS Application at 1-2, Ex. K.

**Response:** Disputed as Plaintiff formally interviewed with Principal Christie only once
on Tuesday, November 24, 2015 at 4 pm.  *See* email dated November 4, 2015, Ex. 2.

22.   Plaintiff continued to work at WATCH HS as an Interim AP while her
application for permanent employment was pending.  *See* Christie Dep. at 87-90, Ex. J.

**Response:** Not disputed.

23.   DOE issued plaintiff a letter dated December 17, 2015, informing plaintiff that
she was hired as the AP Administration, and setting a probationary employment period for
plaintiff that would expire on May 4, 2020.  *See* WATCH Hire Letter, Ex. M.

**Response:** Disputed as Principal Christie (not DOE) issued the letter dated December
17, 2015, appointing Plaintiff as a permanent AP.  *See* WATCH Hire Letter, Ex. M; *see also* emails
dated December 17, 2015, Ex. 3 (showing that Principal Christie tried to move Plaintiff's hire date
back to February 2016 after finding out Plaintiff was pregnant).

24.   Plaintiff's job duties and responsibilities as the AP Administration included,
but were not limited to: ensuring compliance of IEP submissions and evaluations for Special
Education students; timely reporting matters related to Special Education students;
supervising and observing teachers and support staff for grades 9-12; attending and documenting
monthly meetings for administration: supervising and documenting meetings of WATCH HS's

7

"school-based teams"; monitoring and maintaining accurate records of student discharges; collaborating with Principal Christie and Assistant Principal David Rivera ("AP Rivera") on professional development for staff; and collaborating with AP Rivera to supervise departments with English as a Second Language ("ESL") students. *See* Roles and Responsibilities, Ex. L.

> **Response:** Disputed as these job duties were not the Plaintiff's job duties for the 2015-16 school year; these are duties Principal Christie added in the 2016-2017 school year, and Principal Christie only created Ex. L after Principal Christie decided to move forward to terminate Ms. Christie. *See* emails dated August 27, 2015, Ex. 4.

## C.    The 2015-16 School Year

25.  Plaintiffs (sic) official work start time at the beginning of the 2015-16 school year was 8:00 a.m. *See* Complaint 25, Ex. A; Pl. Dep. at 25, Ex. H; Timely Arrival Email and Timecards, Ex. N.

> **Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

26.  From September to December of the 2015-16 school year, plaintiff consistently failed to: monitor and ensure compliance of Individual Education Plan ("IEP") submissions for Special Education students; keep attendance and minutes on meetings she was responsible for attending; complete performance observations for teachers in a timely manner; and submit performance monitoring documents to Principal Christie. Plaintiff also submitted to Principal Christie multiple versions of the same assignment that contained the same errors, and

failed to ask Principal Christie about scheduling employees for required Therapeutic Crisis Intervention Training scheduled to start October 3, 2015 until October 2, 2015. *See* Summer and Fall 2015 Emails, Ex. O, at NYC_0001435, 1477, 1531, 1844.

      **Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

27. Principal Christie emailed plaintiff about late, missing or incorrect work throughout the Fall 2015 semester, including but not limited to: September 25, September 29, October 2, October 7, October 23, November 24, December 9, and December 22, 2015. *See* Summer and Fall 2015 Emails, Ex. O.

      **Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

28. On January 7, 2016, Principal Christie sent plaintiff an email entitled "Timely Arrival." *See* Timely Arrival Email and Timecards, Ex. N.

      **Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

29. In that email, Principal Christie stated that she had met with plaintiff "on several occasions" in the previous months concerning her start time and that plaintiff had "been consistently reporting to work" after her start time of 8:00 AM. *See* Timely Arrival Email and Timecards, Ex. N.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

30. Principal  Christie  noted  in  the  email  that  as  an  Assistant  Principal, plaintiffs "timely arrival  to school  is important," and  that she should  "not  (be) rushing  into the building  with  staff  members  under  your  supervision  who  are  habitually  late  to  work." *See* Timely  Arrival  Email and Timecards, Ex. N.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

31.    Principal  Christie's email  further  noted  that plaintiff  stated  in a December 2016  meeting  that  she  would  make  changes  so that  her late  arrivals  "won't happen  again," but  that there  had  "been  no change  evident," in plaintiff's behavior  since  that meeting.  *See* Timely Arrival  Email and Timecards, Ex. N.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

32. Principal  Christie  directed  plaintiff  to begin  clocking  in upon  her  arrival, and concluded the email  by informing plaintiff that her continued late  arrivals "will  lead to an adverse rating  at the end of the year, and further  disciplinary action."  *See* Timely  Arrival  Email and Timecards, Ex. N.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein, as Principal Christie only had Plaintiff start punching in on January 7,

2016, after she found out about Plaintiff's pregnancy, when Plaintiff was clearly showing as pregnant. See Photos of Plaintiff on December 23, 2015, Ex. 5.

33.     Principal   Christie also   required   other   employees,   including   WATCH School   Counselor   Edwidge   Jean   Dejoie,   to   use a time   punch-card to document her   arrivals   to work. *See* Counselor Time Cards, Ex. P, at 1-4.

**Response:** Disputed insofar as Principal Christie did not have other supervisors at the school punching in their time, and Principal Christie only ordered Plaintiff to start punching in after she found out about Plaintiff's pregnancy and ordered Plaintiff to start doing this without any previous warnings about attendance issues.

34.     Plaintiff's timecards for January, May and June 2016 show that plaintiff arrived late to work, after her 8:00 a.m. start time. Plaintiff's April 2016 timecards show that plaintiff   arrived late to work, after her 7:45 a.m. start time. *See* Timely   Arrival Email and Timecards at D00409-410, D000415. D00417 D000420. Ex. N.

**Response:** Disputed insofar as in January 2016, Plaintiff almost always arrived on time by 8 am; after Principal Christie became aware Plaintiff was pregnant, Principal Christie then changed Plaintiff's start time to 7:45 am and Plaintiff consistently arrived before 8 am.   When Plaintiff was hired by Principal Christie, the start time she was hired for was 8 am.

35. Plaintiff   was   absent   from   work   January   8,   2016   to   attend   a   doctor's appointment, and requested   to use sick   leave time   to cover   her absence. *See* Summer 2016   Opt-Out. Ex. Q, at D00668.

**Response:** Not disputed but this was a single-day absence after Principal Christie found out about Plaintiff's pregnancy, and this has nothing to do with the opt-out form for the Summer 2016. *See* email dated January 20, 2016, Ex. 6.

36. As documentation for her absence, plaintiff submitted to the school a medical appointment note, stating that plaintiff was seen by Dr. Erwin Louise Lerebours for a gynecologic examination on January 8, 2016. *See* Summer 2016 Opt-Out at D00668, Ex. Q.

**Response:** Not disputed but this was a single-day absence after Principal Christie found out about Plaintiff's pregnancy and this has nothing to do with the opt-out form for the Summer 2016. *See* email dated January 20, 2016, Ex. 6.

37. Plaintiff's diagnosis and weight were redacted in the medical appointment note that plaintiff provided to WATCH HS. *See* Summer 2016 Opt-Out at D00668, Ex. Q.

**Response:** Not disputed but this was a single-day absence after Principal Christie found out about Plaintiff's pregnancy and this has nothing to do with the opt-out form for the Summer 2016. *See* email dated January 20, 2016, Ex. 6.

38. As an Assistant Principal, plaintiff was required by DOE to work during the Summer 2016 session. *See* Summer 2016 Opt-Out at D00670, Ex. Q.

**Response:** Disputed as Plaintiff was told or instructed by Principal Christie that she would need to fill out an Opt-Out form since she was pregnant and would not be working summer school and Principal Christie wanted the other AP, David Rivera, to work summer school. *See* Emails dated January 20, 2016, Ex.6.

39. On or about January 15, 2016, plaintiff submitted a hardship leave request seeking an exception from working the Summer 2016 session. *See* Summer 2016 Opt- Out at D00669, Ex. Q.

**Response:** Disputed as Plaintiff was told or instructed by Principal Christie that she would need to fill out an Opt-Out form since she was pregnant and would not be working summer school and Principal Christie wanted the other AP, David Rivera, to work summer school. *See* Emails dated January 20, 2016, Ex. 6.

40. On or about January 22, 2016, Principal Christie held a meeting with plaintiff and plaintiff's union representative to discuss plaintiff's time and leave issues. *See* January 30, 2016 Email, Ex. R.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

41. Principal Christie memorialized the meeting in an email to plaintiff, dated January 30, 2016. *See* January 30, 2016 Email, Ex. R.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

42. In the January 30, 2016 email, Principal Christie noted plaintiff's acknowledgement of at least two (2) previous conversations she had with Principal Christie regarding her start time; that plaintiff was expected to begin her work day promptly at 8:00

13

AM; that plaintiff had promised to make changes to arrive to work on time, but continued to arrive late: and that plaintiff is a model for the staff she supervises. *See* January 30, 2016 Email, Ex. R.

      **Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

      43. Principal Christie's email noted that prior efforts to ensure plaintiff's arrival at work had failed. and that at the January 22, 2016 meeting, Principal Christie requested that plaintiff begin reporting to work at 7:45 a.m. effective February 1, 2016, to allow plaintiff to settle in for work and "maximize [her] supervisory efforts." *See* January 30, 2016 Email, Ex. R; 50-h Transcript at 30-31, Ex. F.

      **Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

      44. Plaintiff was aware that several teachers and staff at WATCH HS who had late arrival and attendance issues, including School Counselor Dejoie, were also monitored by Principal Christie and required to submit formal time cards. *See* Pl. Dep. at 31-32, Ex. H; Counselor Time Cards, Ex. P.

      **Response:** Disputed as this was after Principal Christie found out about Plaintiff's pregnancy and Principal Christie never had other supervisors clocking in.

45. On January 25, 2016, DOE's Human Resources Division advised Principal Christie that plaintiff was required to submit medical documentation in support of her Summer 2016 opt-out request. *See* Summer 2016 Opt-Out at D00336, Ex. Q.

**Response:** Not disputed but this was after Principal Christie found out about Plaintiff's pregnancy and Principal Christie actually received this notice about Plaintiff needing to submit medical documentation on January 20, 2016. *See* Emails, Ex. 6 and Ex. 7.

46. On February 2, 2016, plaintiff submitted to DOE a note from her physician, dated February 1, 2016, stating that plaintiff was "16 3/7 weeks pregnant," receiving pre-natal care, and expected to deliver on or about July 15, 2016. *See* Summer 2016 Opt-Out at D00669, Ex. Q.

**Response:** Not disputed but this was after Principal Christie found out about Plaintiff's pregnancy.

47. This was the first documentation plaintiff ever submitted to DOE regarding her pregnancy, and plaintiff's application was approved. *See* Summer 2016 Opt-Out at D00669, Ex. Q.

**Response:** Not disputed. However, Principal Christie found out about Plaintiff's pregnancy prior to this date and Plaintiff was clearly showing as pregnant in mid-December 2015 as per the before and after photos attached as Ex. 5.

48. Principal Christie testified that she did not learn of plaintiff's pregnancy until she submitted her doctor's note in February 2016. Plaintiff stated to Christie that she

could not work the Summer 2016 session because she required surgery for gallstones. *See* Christie Dep. at 99-101, 168-173 Ex. J.

> **Response:** Disputed as Plaintiff had previously told Principal Christie that she would have gallstone surgery in November 2015.  When Plaintiff went to the doctor for the gallstone surgery, the doctors took a test and found out she was pregnant during the test in November 2015. When Principal Christie asked Plaintiff how the surgery went in early December 2015, Plaintiff informed Principal Christie that she was pregnant in early December 2015 after the Thanksgiving break.  Plaintiff never had the gallstone bladder surgery after she found out about the pregnancy, realizing the pregnancy was the cause of her pain and not the gallstone bladder.  The opt out form she was required to fill out in January 2016 had nothing to do with Plaintiff's gallbladder surgery. *See* Clarke Declaration, Ex. 8.

49.    Both plaintiff and AP Rivera were provided with individually-tailored professional development with coaches and mentors at WATCH HS, in order to help them succeed as administrators throughout the 2015-16 and 2016-17 school years. *See* CCHR Answer, Ex. C; Professional Development, Ex. S.

> **Response:** Disputed and this was only after Principal Christie found out about Plaintiff's pregnancy and the extent of professional development was limited as referenced below.

50.    Sheila Hanley ("Hanley"), a retired principal hired to work with WATCH HS's Social Studies department, worked with plaintiff throughout the 2015-16 school year.  *See* Professional Development, Ex. S; Christie Dep. at 142-144, Ex. H.

> **Response:** Disputed for the reasons set forth in paragraph 51 below.

51.    Plaintiff and Hanley had two (2) formal professional development sessions in October 2015, five (5) sessions in November 2015, five (5) sessions in December 2015; and seven (7) sessions in January 2016, in addition to maintaining informal contact throughout the 2015-16 school year. *See* CCHR Answer ¶ 45, Ex C.

**Response:** Disputed as none of these professional development sessions with Hanley ever occurred with Plaintiff, as confirmed by Hanley herself to Plaintiff.   *See* text messages between Sheila Hanley and Plaintiff on June 17, 2016, Ex.9.


52. Principal Christie further retained retired principal Dr. Linda Patterson, hired to assist with improving literacy education at WATCH HS, to provide professional support to plaintiff. *See* CCHR Answer ¶ 45, Ex. C.; Professional Development, Ex . S, at D00516-518.

**Response:** Disputed and this occurred only after Principal Christie found out about Plaintiff's pregnancy as Patterson was not assigned to work with Plaintiff until after February 2016.


53. Dr. Patterson provided plaintiff with support and recommendations to improve her organization skills and her writing of teacher observation reports. *See* Professional Development at D00516-518, Ex. S.

**Response:** Disputed and this occurred only after Principal Christie found out about Plaintiff's pregnancy as Patterson was not assigned to work with her until after February 2016.


54.    Dr. Patterson advised Principal Christie that plaintiff "could benefit from engaging in purposeful thought about designing and achieving professional goals," as a "more

transparent alignment between goals and practice would provide purpose and efficiency to the execution of her professional responsibilities." Dr. Patterson added that plaintiff "should consider a more efficient use of time throughout the instructional day." *See* Professional Development at D00516, Ex. S.

**Response:** Disputed and this occurred only after Principal Christie found out about Plaintiff's pregnancy as Patterson was not assigned to work with her until after February 2016.

55. Despite receiving personalized professional development, plaintiff continued to perform poorly during the Spring 2016 semester. *See* generally, Spring 2016 Emails, Ex. T.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

56. In the Spring 2016 semester, plaintiff failed to: turn in professional development assistance logs and calendars for the teachers she supervised; complete three (3) teacher observations in a timely manner; assist science teachers in developing a Science Fair showcase for students by April 26, 2016; inform staff of mandatory training and ensure their attendance; schedule job applicants for interviews at WATCH HS; ensure the timely evaluation of a student by a social worker and school psychologist; and provide DOE with student identification information required to secure funding for students to participate m DOE's Training Opportunities Program. *See* Spring 2016 Emails, Ex. T, at 2-4, 7-9, 12.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

57. Plaintiff was aware that a Special Education evaluation request had been submitted for the student, and that it was both her job responsibility as a Special Education supervisor and a legal obligation to ensure that an evaluation was performed within 60 days of the request. *See* Pl. Dep. at 37-38, Ex. H; Roles and Responsibilities, Ex. L.

**Response:** Disputed and this only became an issue after Principal Christie found out about Plaintiff's pregnancy.

58. Throughout the Spring 2016 semester, Principal Christie explicitly stated that plaintiff failed to follow, or failed to timely follow, Principal Christie's directives on at least eight (8) occasions. *See* generally, Spring 2016 Emails, Ex. T.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

59. Plaintiff failed to ensure that the teachers she supervised conducted a Science Fair, and further failed to inform Principal Christie that the teachers decided not to hold a science fair. *See* Science Fair Email. Ex. U.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

60. When asked about the apparent Science Fair cancellation, plaintiff advised Principal Christie that "the teachers told [plaintiff] a while ago that it was too much work and they did not think they could get it done." *See* Science Fair Email, Ex. U.s

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

61.     Principal Christie advised plaintiff in an email dated March 29, 2016, that plaintiff had neglected to communicate this issue to her, and approved the teachers' decision to cancel the science fair in clear conflict with Principal Christie's directives. *See* Science Fair Email, Ex. U.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

62. On or about April 15, 2016, Principal Christie issued plaintiff a disciplinary Letter to File, memorializing Principal Christie's meeting with plaintiff and her union representative on April 1, 2016. *See* April 15, 2016 Letter to File, Ex. V.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

63. At the meeting, Principal Christie again addressed plaintiff's "repeated lateness", as well as plaintiff's "professional performance," including her "failure to complete tasks in a timely manner, the unprofessional tone and manner in which [plaintiff] respond to [Principal Christie's] directives, (as) well as [plaintiff's] repeated lateness despite repeated verbal and email warnings." *See* April 15, 2016 Letter to File, Ex. V.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

64. At plaintiff's request during the April 1, 2016 meeting, Principal Christie agreed to revert plaintiffs work start time back to 8:00 a.m., provided that plaintiff continue to utilize the time clock for the remainder of the 2016-17 school year. *See* April 15, 2016 Letter to File, Ex. V.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

65. The April 15, 2016 letter further advised that plaintiff's continued failure to comply with Principal Christie's directives would "lead to further disciplinary actions including termination of services. *See* April 15, 2016 Letter to File, Ex. V.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

66. Despite claiming that Principal Christie denied her access to the fifth floor restroom, plaintiff testified that, Principal Christie offered plaintiff the alternative of switching her office to the fourth floor, so that plaintiff could use the staff restroom on the third floor. *See* Pl. Dep. at 67, Ex. H.

**Response:** Disputed as Principal Christie denied Plaintiff use of a bathroom when she was eight months pregnant, and denied her a restroom accommodation by stating, "What do you want me to do move the bathroom to your office" and further asked Plaintiff why didn't she find out about bathroom accommodations before requesting accommodations. *See* Transcript of May 20, 2016 meeting audio, Ex. 10.

67. On May 25, 2016, Principal Christie held a disciplinary meeting to discuss with plaintiff and her union representative plaintiff's "unprofessional manner" when responding to Principal Christie's directives. *See* June 8, 2016 Letter to File, Ex. W.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

68. The letter explained that Principal Christie had addressed plaintiff's "unprofessional manner in which [plaintiff] respond[s] to [Principal Christie's] directives including the emotional outbursts, the raising of [plaintiff's] voice, [plaintiff's] inappropriate responses, and [plaintiff's] tone." *See* June 8, 2016 Letter to File, Ex. W.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

69. The letter advised plaintiff that such behaviors were "unprofessional in nature and should not be tolerated." *See* June 8, 2016 Letter to File, Ex. W.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

70.     The June 8, 2016 letter noted that Principal Christie addressed plaintiff's professionalism during an unofficial meeting in March 2016, and during their official meeting on April 1, 2016. *See* June 8, 2016 Letter to File, Ex. W.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

71.    The June 8, 2016 letter concluded by advising plaintiff that if she continued her non-compliance with Principal Christie's directives, it would "lead to further disciplinary actions including termination of services." *See* June 8. 2016 Letter to File, Ex. W.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

72. Principal Christie held an end-of-year meeting with plaintiff on or about June 7, 2016, and memorialized the meeting in an email dated June 16, 2016. *See* June 16, 2016 Email. Ex. X.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

73. During the June 7, 2016 meeting, Principal Christie informed plaintiff that she would receive an "Unsatisfactory" annual rating ("U-Rating"), and that the areas plaintiff needed to improve upon included her lateness, her ineffective use of time, and her tone and approach in responding to and complying with Principal Christie's directives. *See* June 16, 2016 Email, Ex. X.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

74. At the meeting, Principal Christie discussed plaintiffs stated goals for the 2016-2017 school year and Principal Christie's expectations, reviewed a report written by Dr. Patterson containing recommendations for plaintiffs continued professional growth, and discussed next steps for plaintiff to improve her practice. *See* June 16, 2016 Email, Ex. X.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

75. Principal Christie further instructed plaintiff to create an action plan to improve her performance during the 2016-17 school year, and advised that she would monitor plaintiffs progress and offer her recommendations to help plaintiff "begin to effectively build supervisory capacity." *See* June 16, 2016 Email, Ex. X.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

76. Plaintiff admits that during the Spring 2016 semester she had lateness issues, that she made errors on student evaluations, and failed to timely organize the science fair as directed. *See* Pl. Dep. at 34, Ex. H.

**Response:** Disputed as a complete mischaracterization of her testimony and these only arose as "issues" with Principal Christie after she found out about Plaintiff's pregnancy.

77. Plaintiff admits that she never created or submitted a written action plan as directed, and claims that in or around August 28, 2016, she did "plan" to start driving herself to work in order to improve her punctuality. *See* Pl. Dep. at 34-35, Ex. H.

24

**Response:** Disputed as a mischaracterization of her testimony and these only arose as issues after Principal Christie found out about Plaintiff's pregnancy.

78. On or about June 23, 2016, plaintiff received a U-Rating for the 2015- 2016 school year. *See* Unsatisfactory Rating, Ex. Y.

**Response:** Disputed as to the validity of the U-Rating.

79. The section of the plaintiff's U-Rating entitled "End of the Year Summary" reflects that Plaintiff "Did Not Meet Goal" in three (3) of five (5) categories of annual goals and objectives, including: (1) effectively supervising the Science teachers for a school-wide fair and supporting teachers through differentiated professional development activities; (2) strategically approaching tasks in a fluid manner ensuring that multiple elements are addressed in a timely manner; and (3) engaging in effective and professional supervision of school outreach staff and support staff. *See* Unsatisfactory Rating, Ex. Y.

**Response:** Disputed as to the validity of the Unsatisfactory rating and notes that these were not Plaintiff's goals for the 2015-2016 school year. *See* email dated November 24, 2015, Ex. 11.

80. The U-Rating specifically noted that plaintiff failed to inform Principal Christie about the cancellation of the science fair, that plaintiff needed to be told multiple times to complete tasks, that plaintiff ineffectively used her time, and that plaintiff employed "poor supervisory practice" such that "lines between supervision and friendship is blurred." *See* Unsatisfactory Rating, Ex . Y.

**Response:** Disputed as to the validity of the U-Rating.

81.     Plaintiff gave birth to her child on July 17, 2016. *See* Complaint 59, Ex. A.

**Response:** Not disputed.

82.     Principal Christie denies calling plaintiff "fat," "pregnant and forgetful," that she mocked plaintiff "rubbing her belly and following her in a waddling manner," or that she relocated plaintiff's office due to her pregnancy. *See* Christie Dep. at 214-222, Ex. J.

**Response:** Not disputed but this shows Principal Christie's complete lack of credibility as she was caught in a recording saying so. *See* Audio Transcript, Ex. 10.

**D.     The 2016-17 School Year**

83. DOE Personnel Memorandum No. 1 2010 is a policy that provides employees who require time to express breast milk thirty (30) minutes plus walking time to any designated lactation room in the workplace. *See* Lactation Scheduling. Ex. Z, at 1-3.

**Response:** Not disputed.

84. When plaintiff returned to work for the 2016-17 school year, Principal Christie moved plaintiff's work start time to 8:45 a.m. and promptly accommodated plaintiff with a lactation schedule at plaintiff's request, pursuant to DOE's policy. *See* Lactation Scheduling at P0109 (Email dated September 2, 2016). Ex. Z; January 30, 2016 Email, Ex. R.

**Response:** Disputed as Plaintiff's start time was moved from 8 am to 7:45 am (not 8:45 am) and 7:45 am was a new time imposed by Principal Christie for no legitimate reason and Principal Christie dictated the original lactation schedule for Plaintiff in a Cabinet meeting with

26

AP Rivera on August 28, 2016 without allowing Plaintiff to give input on the time of the schedule. *See* Ex. Z.

85.     Plaintiff's performance during the 2016-17 school year did not improve as reflected by numerous emails from Principal Christie noting plaintiff's failure to ensure that IEPs were completely reviewed and in compliance, that she continued to complete assignments late, and failed to maintain adequate communication with Principal Christie and follow up on tasks. Plaintiff also missed a professional development session, failed to turn in an assignment two (2) months late, and, and left sensitive documents open on her office computer which were available for other employees to see. *See* 2016-17 Emails at "2F", D00716, D00897, D00904, Ex. AA; 50-h Transcript at 36-37, Ex. F.

**Response:** Disputed as to the truth and accuracy of the statements and these emails are indicative of the retaliation to which Principal Christie subjected Plaintiff, and omits Plaintiff's responses to Principal Christie's emails.

86.     Principal Christie issued plaintiff a disciplinary Letter to File dated October 24, 2016, which memorialized Principal Christie's meeting that took place on October 21, 2016 with Plaintiff and Plaintiff's union representative. *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation Plaintiff suffered.

87. The October 24, 2016 letter addressed plaintiff's failure to: supervise completion of IEPs and thoroughly review them for submission; plaintiff's submission of an incomplete annual professional development plan for the teachers she supervised; plaintiff's continued failed to keep professional development meeting minutes; and plaintiff's continued acts of "insubordination," including her failure to submit an action plan to Principal Christie for a 2016-17 campus-wide science fair. *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation Plaintiff suffered.

88. Principal Christie specifically noted that that she became aware of plaintiff's failure to ensure compliance with student IEPs because she received an email alerting her that WATCH HS "was out of compliance in terms of the ICT instructional placements for several of our special education students." *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation Plaintiff suffered.

89. When Principal Christie advised plaintiff of inaccuracies in two (2) IEPs that plaintiff was responsible for monitoring, plaintiff admitted that she did not review the actual IEP documents. Plaintiff refused to "own" any additional IEPs with errors or take responsibility for student services being out of compliance. *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation Plaintiff suffered.

90. Further, Principal Christie noted that, over the course of several weeks, she requested team meeting minutes and a professional development plan, which Plaintiff never submitted. *See* October 24, 2016 Letter to File, Ex . BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation Plaintiff suffered.

91. In the meeting, Plaintiff stated that she had completed the professional development plan, and had forwarded it to both Principal Christie and Principal Christie's secretary. *See* October 24, 2016 Letter to File, Ex . AA.

**Response:** Not disputed.

92. Neither Principal Christie nor her secretary received the email plaintiff allegedly sent, and after the meeting, plaintiff admitted in an email to Principal Christie that she never sent the professional development plan. *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

93. Principal Christie noted in the Letter to File that she had directed Plaintiff to submit her goals for the 2016-2017 school year by September 30, 2016, but that plaintiff still failed to do so by October 24, 2016. *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

94. Plaintiff also failed to submit an action plan for the planned 2016-2017 campus-wide science fair, and failed to attend a scheduled meeting with Principal Christie on October 11, 2016. *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

95. The October 24, 2016 letter concluded by advising that plaintiff's conduct constituted "neglect of duty, professional misconduct, conduct unbecoming and/or insubordination" and that "the above-described incidents may lead to disciplinary action including termination." *See* October 24, 2016 Letter to File, Ex. BB.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein.

96. On or about October 26, 2016. plaintiff submitted a complaint to the DOE's Office of Equal Opportunity and Diversity Management ("OEO"), alleging discrimination by Principal Christie. *See* OEO Investigation, Ex. CC.

**Response:** Not disputed.

97. In response, OEO conducted an investigation into plaintiff's complaint, which included interviews of plaintiff. *See* OEO Investigation, Ex. CC, at 1; P0098-99.

**Response:** Disputed as to whether an adequate "investigation" was conducted by the DOE's own internal OEO office.

98.  On November 1, 2016,  Principal  Christie  met with  plaintiff  and her union representative to again  discuss  plaintiff's lack  of  progress  in completing tasks  assigned to her. Principal  Christie  memorialized the  meeting  in a disciplinary letter,  dated  November 2, 2016. *See* November 2, 2016 Letter to File, Ex. DD.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation Plaintiff suffered.

99.  At the meeting, Principal  Christie  noted  that the professional development plan plaintiff  submitted following their October  21, 2016  disciplinary meeting  contained out-of- date information.  *See* November 2, 2016  Letter to File, Ex. DD.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation Plaintiff suffered.

100. When  Principal  Christie  questioned  Plaintiff  about  missing  information  and errors  in plaintiff's action  plan,  plaintiff  responded  that she "did  not read to see that the old information was still there."  *See* November 2, 2016 Letter  to File, Ex. DD.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

101. Principal  Christie  also addressed  Plaintiff's failure to follow her  directives concerning the School's Consolidated Plan  and how this  failure forced other  staff members to perform  Plaintiff's responsibilities. *See* November 2. 2016  Letter to File, Ex. DD

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

102. At the November 1, 2016 meeting, Christie also addressed plaintiff's failure to adopt edits and changes in the school-wide Special Education Implementation Action Plan that she submitted for review by Principal Christie, plaintiff's failure to properly edit the school's Language Action Plan, and plaintiff's complete failure to create Individualized Education Programs ("IEPs") and behavior plans for Special Education students. *See* November 2, 2016 Letter to File, Ex. DD.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

103. The November 2, 2016 letter concluded by advising plaintiff that such "incidents may result in further disciplinary actions including an adverse rating and termination." *See* November 2, 2016 Letter to File, Ex. DD.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

104. On or about November 3, 2016, Principal Christie issued plaintiff another disciplinary Letter to File concerning plaintiff's "unprofessional behaviors as well as [her] insubordination." *See* November 3, 2016 Letter to File, Ex. EE.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliaion she suffered.

105. During the November 1, 2016 meeting, plaintiff admitted to sharing with other staff members confidential information she learned while conducting a disciplinary meeting with a paraprofessional. *See* November 3, 2016 Letter to File, Ex. EE.

**Response:** Disputed as to the characterization and validity of the letter and the truth of the conclusions and assertions made therein.

106. During this meeting, Principal Christie also addressed plaintiff's insubordination in failing to appear for a meeting with Principal Christie on October 24, 2016. *See* November 3, 2016 Letter to File, Ex. EE.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

107. Principal Christie requested that plaintiff meet with her at 8:10 a.m. on October 24, 2016, and plaintiff failed to appear. At 8:35 AM, Principal Christie walked into the hallway and observed that plaintiff was sitting down in a cosmetology class getting a manicure. *See* November 3, 2016 Letter to File, Ex. EE.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

108. Plaintiff then appeared at Principal Christie's office at 8:47 a.m. on October 24, 2016, denied being in the cosmetology class for a manicure, and claimed that she had been performing a morning walkthrough. *See* November 3. 2016 Letter to File, Ex. EE.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

109. When Principal Christie presented plaintiff with a photograph taken for the school newsletter that capture plaintiff receiving a manicure in the cosmetology class, plaintiff stated "Yes, that is me, but I was not getting a manicure done, I was getting my nails cleaned." *See* November 3, 2016 Letter to File, Ex. EE.

**Response:** Disputed as to characterization and the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

110. The November 3, 2016, letter concluded by advising that these "incidents may result in further disciplinary actions including an adverse rating and termination." *See* November 3, 2016 Letter to File, Ex. EE.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

111. On or about November 22, 2016, Principal Christie issued plaintiff a disciplinary Letter to File that memorialized a November 17, 2016 meeting at which plaintiff twice declined to have a union representative present. *See* November 22, 2016 Letter to File, Ex. FF.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

112.   At the meeting, Principal Christie addressed plaintiff's failure to submit her administrative goals after several reminders, as well as a statement that plaintiff made to at Principal Christie on November 14, 2016, which Principal Christie considered "threatening in nature." *See* November 22, 2016 Letter to File, Ex. FF.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

113.   In that incident, plaintiff asked to speak with Principal Christie privately stating that they needed to have a "very frank and open conversation," and that plaintiff wanted to speak with Principal Christie about " 'putting things on the table' before they escalate and go higher than both of us where I am going to have regrets." *See* November 22, 2016 Letter to File, Ex. FF.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

114. Principal Christie advised plaintiff that she would not engage in a conversation of that nature, and noted in the Letter to File that plaintiff's statements were threatening, unprofessional, and that plaintiff should refrain making from those type of statements. *See* November 22, 2016 Letter to File, Ex. FF.

**Response:** Disputed as to the characterization and validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

35

115. The November 22, 2016, letter concluded by advising plaintiff that her "misconduct may result in further disciplinary action including an unsatisfactory rating and termination of your employment." *See* November 22, 2016 Letter to File, Ex. FF.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

116. On or about December 12, 2016, Principal Christie issued plaintiff a disciplinary letter to file memorializing a meeting with plaintiff and her union representative on December 9, 2016. *See* December 12, 2016 Letter to File, Ex. GG.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

117. Principal Christie held the disciplinary meeting on December 9, 2016 to address plaintiff's "unprofessionalism as it relates to [plaintiff's] use of poor judgment and insubordination," as well as "instances of dereliction of duty and incompetence in [plaintiff's] ability to effectively execute [her] responsibilities." *See* December 12, 2016 Letter to File, Ex. GG.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

118. At the meeting, Principal Christie noted that plaintiff had knowingly told school staff that a student had been suspended when plaintiff had been advised, and had

documentation reflecting, that the student was not suspended. *See* December 12, 2016 Letter to File, Ex. GG.

      **Response:** Disputed as to the characterization and validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

      119. Additionally, Principal Christie addressed plaintiff's submission of empty student profiles to a Quality Reviewer. When Principal Christie asked why plaintiff had not checked the profiles for accuracy before submitting them, plaintiff replied, "It [sic] just poor judgment on my part, I told her it was a mistake." *See* December 12, 2016 Letter to File, Ex. GG.

      **Response:** Disputed as to the characterization and validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

      120. Principal Christie explained that plaintiff's exercise of poor judgment created problems for the school community because Principal Christie either had to reassign plaintiff's tasks to other staff to perform or perform them herself. *See* December 12, 2016 Letter to File, Ex. GG.

      **Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

121. At the meeting, Principal Christie further addressed plaintiff's ongoing failure to submit her 2016-2017 personal goals and an action plan for the school science fair, both of which were due to Principal Christie months earlier, on September 30, 2016. *See* December 12, 2016 Letter to File, Ex. GG.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

122. The December 12, 2016 letter concluded by informing plaintiff that "the above described incidents constitute neglect, dereliction of duty, and incompetence," and that those "incidents may result in further disciplinary action including termination." *See* December 12, 2016 Letter to File, Ex. GG.

**Response:** Disputed as to the validity of the letter and the truth of the conclusions and assertions made therein and is part of the discrimination and retaliation she suffered.

123. On or about December 23, 2016, the DOE Superintendent of High Schools, Donald Conyers ("Superintendent Conyers"), issued plaintiff a letter advising that on January 23, 2017, he would review whether to discontinue plaintiff's probationary employment as a probationary Assistant Principal. *See* WATCH Termination, Ex. HH, at 1.

**Response:** Not disputed.

124. By letter dated January 23, 2017, Superintendent Conyers denied plaintiff's Certification of Completion of Probation and terminated plaintiff's employment as a probationary Assistant Principal. *See* WATCH Termination, Ex. HH, at 2.

**Response:** Not disputed.

125. Plaintiff admitted that she was terminated from WATCH HS due to documented "poor performance" and because she was "frequently late." *See* 50-h Tr. at 20-21, 30-31. Ex. F.

**Response:** Disputed as to the characterization of the testimony insofar as this was Principal Christie's characterization of Plaintiff's performance only after learning about her pregnancy and her CCHR complaint against her.

126.  Plaintiff never suffered deductions in her salary at WATCH HS, even when she was late to work. *See* 50-h Tr. at 22-24. Ex. F.

**Response:** Undisputed.

127. On or about June 29, 2017, DOE administratively closed its file on plaintiff's OEO Complaint, for failure to articulate a violation of DOE Chancellor's Regulation A-830. *See* OEO Investigation at D01487, Ex. CC.

**Response:** Disputed as to the objective validity of the OEO investigation, which is not a neutral agency but rather an internal division of the DOE staffed by DOE-paid lawyers and investigators, and a mischaracterization insofar as that OEO has a policy to stop investigating employee complaints when an employee files a similar complaint with an outside agency, which occurred here.

## ADDITIONAL STATEMENTS OF UNDISPUTED FACTS FROM PLAINTIFF

131.     In October 2013, Defendant Principal Claudette Christie was hired as principal of WATCH High School for the 2013 – 2014 school year. *See* Principal Claudette Christie Dep.("Christie Dep.")  at 19, Ex. 1.

132.     In October 2013, Camille Bucknor was assigned as Principal Christie's Assistant Principal for the 2013 – 2014 school year. *See* Christie Dep. at 19 - 25, Ex. 1.

133.     In October 2013, Principal Christie learned about AP Bucknor's pregnancy. *See* Christie Dep. at 19 - 25, Ex. 1.

134.     In the 2013 – 2014 school year, Principal Christie gave AP Bucknor Disciplinary Letters to her file and an Unsatisfactory performance rating while AP Bucknor was pregnant. *See* Christie Dep. at  19 - 25,  82, Ex. 1.

135.     In the 2013 – 2014 school year, Principal Christie gave AP Bucknor an Unsatisfactory rating for her performance and reverted her back to a teacher position and discontinued her as an AP.  *See* Christie Dep. at 19 - 25, 82, Ex. 1.

136.     In the 2014 – 2015 school year, AP David Rivera was hired as an Assistant Principal. *See* Christie Dep. at 21 – 24, Ex. 1.

137.     In the 2014 – 2015 school year, AP David Rivera went through a C-30 hiring process. *See* Christie Dep. at  21 – 24, Ex. 1.

138.     In the 2014 – 2015 school year, Principal Christie hired Ms. Ellis-Wright as Interim Acting Assistant Principal (AP).  *See* Christie Dep. at  24, Ex. 1.

139.     In the 2014 – 2015 school year, Ms. Ellis-Wright worked four (4) months as Interim Acting AP and reverted back to a teacher due to Principal Christie rating her poorly for her performance. *See* Christie Dep.  at 24 – 27, 80 – 81, Ex. 1.

140.     In the 2014 – 2015 school year, Principal Christie did not have Interim Acting AP. Ellis-Wright go through a C-30 hiring process to become a permanent AP based on poorly rating her performance  *See* Christie Dep. at 24 – 27, 80 – 81, Ex.1.

141.     In 2014 – 2015 school year, Plaintiff Simone Clarke was hired as Interim Acting AP by Principal Christie. *See* Christie Dep. at 55 – 56, 59, 61, Ex. 1.

142.     In April 2015, Principal Christie told Plaintiff about an AP Job Posting at WATCH High School. *See* Christie Dep. at 57 – 59,  61, Ex. 1.

143.     On or around April 2015, Principal Christie interviewed Plaintiff for a full time Interim Acting Assistant Principal position. *See* Christie Dep. at  58 – 59,  61, Ex. 1.

144.     Principal Christie had multiple applicants apply for the position and did a thorough review of all potential applicants. *See* Christie Dep. at  60 and 61, Ex. 1.

145.     On or about May 5, 2015, Principal Christie hired Plaintiff for a full time Assistant Principal Interim Acting position.  *See* Christie Dep. at  66-67, Ex. 1.

146.     On or around June 2015, Principal Christie asked Plaintiff to work as a full time AP for the duration of the *entire* Summer School at WATCH HS. *See* Christie Dep.  at 69 – 70, Ex. 1,  and email dated July 22, 2015, Ex. 13.

147.     In the 2014 – 2015 school year, Principal Christie gave Plaintiff a Satisfactory annual rating for her performance as Interim Acting AP.  *See* Christie Dep. at 70, Ex. 1.

148.     On or about August 28, 2015, Plaintiff began working as  Interim AP for the 2015 – 2016 school year at WATCH High School . *See* Simone Clarke Declaration, Ex. 8.

149.     In or around October 2015, Principal Christie began a C-30 hiring process for Plaintiff to work  as a permanent AP at WATCH High School.  *See* Christie Dep. at  88, Ex. 1.

150.     Plaintiff applied for the AP position along with multiple candidates as part of the C-30 process. *See* Christie Dep. at 90, Ex. 1.

151.     Principal Christie reviewed the resumes of all candidates who applied for the permanent AP position. *See* Christie Dep. at 90, Ex. 1.

152.     Principal Christie rated the Plaintiff as the top candidate during the C-30 hiring process. *See* Christie Dep. at 91, Ex. 1.

153.     Principal Christie, along with the 10 – 15 members of the C-30 Committee, chose from approximately seven candidates for the AP position at WATCH High School. *See* Christie Dep. at 91 – 93, Ex. 1.

154.     In October 2015, Principal Christie interviewed Plaintiff and another candidate for the permanent AP position after the C-30 committee meeting reduced the seven candidates down to two finalist candidates. *See* Christie Dep. at 95, Ex. 1.

155.     In November 2015, Principal Christie made the final decision to select the Plaintiff for the permanent AP position at WATCH High School after working with Plaintiff for four to six months as Interim Acting AP. *See* Christie Dep. at 95 – 96, Ex. 1.

156.     From May 2015 – December 2015, Principal Christie was satisfied with Plaintiff's work performance and often thanked the Plaintiff for a job well done. *See* emails thanking Clarke for job well done, Ex. 14.

157.     In or around December 2015, Plaintiff informed Principal Christie that she was pregnant. *See* CCHR Complaint, Ex. 15.

158.     In or around December 2015, Principal Christie told Plaintiff that she was "not working as hard" and was "not as efficient," since she became pregnant. *See* CCHR Complaint, Ex. 15.

159.     In or around December 2015, on approximately two (2) occasions, Principal Christie told Plaintiff that she was becoming, in sum and substance, "fat." *See* CCHR Complaint, Ex. 15.

160.     In January 2016, Principal Christie told Plaintiff that Plaintiff was often late arriving to work. Throughout her employment, Plaintiff regularly arrived to work at around the same time, but Principal Christie only spoke to Plaintiff about her arrival time after Plaintiff told Principal Christie that she was pregnant. *See* email dated September 2, 2016 re scheduling, Ex. 47.

161.     As a result of her allegedly late arrivals, Principal Christie instructed Plaintiff to "clock in" her time when she arrived at work. Principal Christie instructed Complainant to "clock in" upon arrival because she was pregnant. *See* CCHR Complaint, Ex. 15.

162.     On or about January 15, 2016, Principal Christie informed Plaintiff that she needed to complete an "Opt-Out" Form for Summer School 2016, due to her pregnancy. *See* email dated January 14, 2016, Ex.7.

163.     On or about January 15, 2016, Plaintiff completed the "Opt-Out" Form only, without any supporting documents, and submitted it to Principal Christie's secretary, Ms. Doucet. *See* email dated January 14, 2016, Ex. 7.

164.     Principal Christie ordered Plaintiff to complete the "Opt-Out" Form, although the "Opt-Out" Form was not due until March 2016,  because she wanted AP Rivera to work Summer School 2016.  *See* email dated January 20, 2016 Ex.16.

165.     In February 2016, Plaintiff completed the "Opt-Out" Form and gave in supporting documentation after her doctor visit. *See* email dated January 20, 2016, Ex.6.

166.     In late January 2016, at a meeting with Plaintiff and her union representative, Principal Christie told Plaintiff that she no longer had to "clock in" upon arrival, but that her arrival time would be moved earlier to 7:45 am from 8 am, although 8 am had been Plaintiff's arrival time since she began her employment at WATCH High School. *See* email dated January 30, 2016, Ex.52.

167.     In March 2016, Principal Christie told Plaintiff, "If you're having issues with your pregnancy, you should take off." *See* Audio Transcript May 20, 2016 Meeting, Ex. 10.

168.     In March 2016, Principal Christie called Plaintiff out of a meeting that Plaintiff was holding in her office with several staff members. Principal Christie told Plaintiff that she "didn't like that [Plaintiff] was leaning back in her chair and rubbing her belly, gossiping" *See* CCHR Complaint, Ex. 15.

169.     In April 2016, Principal Christie mocked Plaintiff's pregnancy by rising out of her seat in the main office or lobby area with mock difficulty and stating, "Here comes Ms. Clarke now," while rubbing her belly and following Plaintiff in a waddling manner. Other staff members were present and witnessed Principal Christie's behavior towards Plaintiff. *See* Audio Transcript May 20, 2016 Meeting, Ex. 10; Audio Transcript of Clarke's conversation with Ms. Ramos April 20, 2016, Ex. 12.

170.     In May 2016, Principal Christie told Plaintiff that she could no longer use the bathroom located on the fifth floor at the school, where Plaintiff's office was located, and instructed her to use the third-floor bathroom instead. Principal Christie was aware that Plaintiff needed to use the bathroom frequently as a result of her pregnancy and, Principal Christie allowed other staff members to continue to use the fifth floor bathroom, but

instructed Plaintiff not to use that bathroom. *See* Audio Transcript May 20, 2016 Meeting,

Ex. 10; CCHR complaint, Ex 15.

171.    On May 20, 2016, Plaintiff expressed to Principal Christie that she wanted Principal

Christie to be "considerate" of her need to use the closest bathroom. Principal Christie

replied, in sum and substance, "Why don't you go find out about a reasonable

accommodation? Do you want me to pick up the bathroom and move it to you?" *See* Audio

Transcript May 20, 2016 Meeting, Ex. 10.

172.    Principal Christie then called Plaintiff "disrespectful" and told her in a threatening

manner that she had "discontinued" the only other pregnant AP employee who had been as

disrespectful towards her.  *See* Audio Transcript May 20, 2016 Meeting, Ex. 10.

173.    In late May 2016, Principal Christie scheduled another meeting with Plaintiff and

a union representative to address Plaintiff's "disrespectful" behavior towards her. See June

8, 2016 Letter to File, Ex. 49.

174.    In late May 2016, Plaintiff went to the NYC Commission on Human Rights to file

a Pregnancy Discrimination Complaint against Principal Christie. *See* CCHR Complaint,

Ex. 15.

175.    On June 8, 2016, Principal Christie gave Plaintiff a "write-up" letter and asked her

to sign it immediately. Plaintiff had forty-eight (48) hours to sign the letter. Plaintiff

declined to sign the letter immediately in order to review it.  Principal Christie indicated in

the letter that Plaintiff had a poor attitude and that future disciplinary "write-ups" could

lead to termination of her employment. *See* CCHR Complaint, Ex. 15, and email dated

October 28, 2016, Ex. 17.

176.     On June 8, 2016, Principal Christie asked Plaintiff to meet with her for her year-end conference. Principal Christie told Plaintiff that she would give Plaintiff an "Unsatisfactory" rating ("U-rating") on her end-of-year review. Principal Christie then asked Plaintiff to submit to her a breastfeeding schedule, including when and how frequently Plaintiff planned to pump when she returned from maternity leave the following year. Principal Christie told Plaintiff that due to her tardiness issue, Principal Christie wanted Plaintiff to have a more structured work day. *See* CCHR Complaint, Ex. 15.

177.     After Plaintiff received her U-rating for the 2015-16 school year on June 23, 2016, she was no longer eligible for per session overtime work which she had previously performed, such as Saturday School. *See* September 16, 2016 email chain, Ex. 55.

178.     On July 17, 2016, Plaintiff gave birth to a baby girl.   *See* Clarke Declaration, Ex. 8.

179.     On or around August 28, 2016, Plaintiff returned to work as a permanent AP at WATCH High School, at which time Principal Christie discussed a breast pumping schedule with Plaintiff. *See* Clarke Declaration, Ex. 8.

180.     On September 2, 2016, Principal Christie received a NYC Commission on Human Rights Complaint by Plaintiff, alleging that Principal Christie violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., by discriminating against Plaintiff on the basis of her sex and pregnancy. *See* CCHR Letter dated October 13, 2016 for Respondents' Failure to Answer, Ex. 19.

181.     After Principal Christie received the NYC Commission on Human Rights Complaint  filed by Plaintiff, Principal Christie began to retaliate against Plaintiff by making Plaintiff's daily tasks and activities more difficult. Principal Christie increased

scrutiny of Plaintiff's job performance and Plaintiff began receiving disciplinary letters to file from Principal Christie for picayune and fabricated reasons. *See* Clarke Declaration, Ex. 8.

182.    On September 14, 2016, Principal Christie sent an email to reprimand Plaintiff about covering on office door when "pumping". *See* email dated September 14, 2016, Ex. 20.

183.    On September 27, 2016, Principal Christie's DOE attorney emailed CCHR to state that she received Plaintiff's CCHR Complaint against the NYCDOE on September 12, 2016. *See* Email chain with CCHR's Ya Li, Ex. 21.

184.    On October 4, 2016, Principal Christie sent an email to reprimand Plaintiff regarding an inventory list and AP Exams Survey Completion. *See* October 5, 2016 email, Ex. 22.   This was contrary to the AP's union contract by assigning the Plaintiff a task especially assigned to school secretary and that the DOE provides budgetary funds adequate to insure that appropriate personnel will be provided to relieve supervisors of such routine non-supervisory duties as taking inventory of material, distribution of supplies and textbooks, messenger service and bus duties. *See* the rules of Special Circular 31 from the New York City Department of Education, and CSA Contract Article VI – Special Working Condition, Ex. 23.

185.    On October 5, 2016 Principal Christie had her secretary reprimand Plaintiff in an email regarding removal of computers in the teacher lounge and inventory of items. *See* October 5, 2016 email, Ex. 22, which again is contrary assigning Plaintiff with a task especially assigned to school secretary and that the DOE provide budgetary funds adequate to insure that appropriate personnel will be provided to relieve supervisors of such routine

non-supervisory duties as taking inventory of material, distribution of supplies and textbooks, messenger service and bus duties. *See* the rules of Special Circular 31 from the New York City Department of Education, and CSA Contract Article VI – Special Working Condition, Ex. 23.

186.     On October 6, 2016, Principal Christie emailed to reprimand Plaintiff regarding new ELL supervisor responsibilities given to Plaintiff for the 2016 – 2017 school year, which differed from the 2015 – 2016 school year roles and responsibilities. Plaintiff was given new ELL supervision as retaliation for filing the CCHR Complaint against Principal Christie. *See* email dated October 6, 2016, Ex. 24

187.     On October 7, 2016, Principal Christie emailed to reprimand Plaintiff regarding glass in Plaintiff's office door being covered during her breast "pumping", teacher's bulletin board, and calling the custodian to relocate bookcases in teachers' rooms, again assigning the Plaintiff with a task especially assigned to a school secretary and that the DOE provide budgetary funds adequate to insure that appropriate personnel will be provided to relieve supervisors of such routine non-supervisory duties as taking inventory of material, distribution of supplies and textbooks, messenger service and bus duties. *See* October 7, 2016 email, Ex. 25, and the rules of Special Circular 31 from the New York City Department of Education, and CSA Contract Article VI – Special Working Condition, Ex. 23.

188.     On October 8, 2016, Principal Christie emailed to reprimand Plaintiff for reaching out to a teacher for access to the school website to add photos, stating that she told Plaintiff to take care of the matter because the teacher had too much on her plate. Plaintiff informed Principal Christie that the teacher is the only one with Principal Christie's password access

to the website, and asked Principal Christie for access to the website. Principal Christie never responded to grant her such access. *See* email dated October 13, 2016, Ex. 26.

189.     On October 9, 2016, Principal Christie emailed Plaintiff to reprimand her for not reporting on the ELL Data, complaining about not receiving an update on October 7, 2016 at the end of the day.  Principal Christie further wrote that Plaintiff left the building at 3:05 pm and still did not receive an update from Plaintiff. Plaintiff responded to Principal Christie's email and reminded Principal Christie that they met on October 7, 2016, to discuss the data.  *See* October 11, 2016 email, Ex. 27.

190.     On October 19, 2016, Plaintiff received an email where Principal Christie began spreading false innuendo and rumors about the Plaintiff to provoke negative reactions in the workplace when Principal Christie accused Plaintiff of not following NYCDOE academic policy when sending a PIF letter. *See* email dated 10/28/16, Ex 28.

191.     On October 20, 2016, Plaintiff received a letter from Principal Christie requesting a disciplinary meeting for October 21, 2016, to discuss her job performance. *See* letter dated October 20, 2016, Ex. 29.

192.     On October 21, 2016, Principal Christie emailed to reprimand Plaintiff regarding students with IEP incorrect scheduling in STARS, wherein Principal Christie misread an attached document and chastised Plaintiff for not reconvening an IEP meeting, although IEP meetings are not needed to resolve the issues.  *See* email dated October 23, 2016, Ex. 30.

193.     On October 21, 2016, Principal Christie emailed to reprimand Plaintiff for placing meeting agendas, minutes, and signature pages in the Attendance binder after 5pm instead

of the end of the day, which Principal Christie stated was by 2:30pm. *See* email dated
October 23, 2016, Ex. 31.

194.     On October 21, 2016, at 9:39 pm in the evening, Principal Christie emailed to
reprimand Plaintiff for having the pupil personnel secretary assist in typing data on the
Professional Development Calendar, again assigning Plaintiff with a task especially
assigned to school secretary and contrary to the rules that the DOE provide budgetary funds
adequate to insure that appropriate personnel will be provided to relieve supervisors of
such routine non-supervisory duties as taking inventory of material, distribution of supplies
and textbooks, messenger service and bus duties. *See* email dated October 24, 2016, Ex.
32, and the rules of Special Circular 31 from the New York City Department of Education,
and CSA Contract Article VI – Special Working Condition, Ex. 23..

195.     On October 22, 2016, Principal Christie assigned the Student Intervention Team
(SIT) Action Plan creation and completion to Plaintiff.  In the prior school year, the Special
Ed Committee wrote the SIT Plan together and then submitted it to Principal Christie for
submission. Principal Christie further made Plaintiff's tasks and activities more difficult
when she denied Plaintiff permission to attend a New Visions Special Education Liaison
Meeting, where the topic of discussion was guidance for an effective SIT.   Principal
Christie further deterred the Plaintiff by isolating Plaintiff from the previous SIT team
members and preventing Plaintiff from discussing  the SIT with the previous SIT team and
meeting with the teachers from the previous SIT team without Plaintiff's attendance. *See*
Emails dated October 11, 2016 entitled " October 19th New Visions Special Education
Liaison Meeting", and email dated October 29, 2016 entitled "Submission of SIT Action
Plan", Ex. 33 and 34.

196.     On October 23, 2016, Plaintiff emailed her union CSA Representative, Eleanor Andrews, regarding filing a grievance against Principal Christie, stating that on October 21, 2016, after having a disciplinary meeting with Principal Christie and Ms. Andrews, Principal Christie met with Plaintiff three (3) times during that day, pulling Plaintiff out of a SIT team meeting, to discuss a disciplinary meeting Principal Christie had with a paraprofessional, where Principal Christie denied spreading false innuendo and rumors about the Plaintiff to provoke negative reactions in the workplace. Plaintiff also wrote that Principal Christie will be giving Plaintiff all of AP Rivera's APO duties and responsibilities, adding to  Plaintiff's tasks and activities making it more difficult for Plaintiff. Plaintiff also wrote that Principal Christie had discussed her lactation schedule openly in a meeting with AP Rivera. When Plaintiff requested to discuss the matter privately at a later time, Principal Christie refused and continued to discuss the sensitive matter. *See* email dated October 28, 2016, entitled "Hostile Work Environment", Ex. 35.

197.     On October 24, 2016, Plaintiff received an email where Principal Christie began spreading false innuendo and rumors about Plaintiff to provoke negative reactions in the workplace when Principal Christie accused Plaintiff of getting a manicure in a Cosmetology class where students were practicing nail treatments after Plaintiff visited the class for 5 minutes while doing requested walkthroughs of all the classes on the fourth and fifth floor. *See* email dated October 24, 2016, entitled, "Professionalism", Ex. 36.

198.     On October 28, 2016, Principal Christie emailed to reprimand Plaintiff for informing her of plans for a writing professional development for the teachers. Plaintiff reminded Principal Christie that Plaintiff had discussed the PD with Principal Christie on October 21, 2016 and copied Principal Christie on all corresponding emails. *See* email

dated October 28, 2016 entitled, "Writing Across the Curriculum PLC for Teachers at Affinity", Ex. 37.

199.    On October 26, 2016, Plaintiff emailed her union CSA representative to file a Special Complaint against Principal Christie, stating that Principal Christie had no intentions of giving her support to succeed at Plaintiff's job and referencing email evidence to document the harassment. *See* email dated October 28, 2016 entitled, "Hostile Work Environment", Ex. 35.

200.    Two days later, on October 28, 2016, Plaintiff received two (2) letters from Principal Christie requesting a disciplinary meeting against her for November 1, 2016, to discuss unprofessional conduct and job performance. *See* email dated October 28, 2016 entitled "Disciplinary Conferences," Ex. 38.

201.    On November 2, 2016, a request for a Special Complaint of Harassment and Intimidation Conference on Plaintiff's behalf against Principal Christie was submitted to NYCDOE Office of Labor Relations. *See* email dated November 2, 2016 entitled, "Request for a Special Complaint of Harassment and Intimidation Conference for Simone Clarke", and Request for a Special Complaint of Harassment and Intimidation Conference", Ex. 39.

202.    On November 2, 2016, Principal Christie emailed to reprimand Plaintiff for singing religious songs in the hallways as Plaintiff conducted her walkthroughs or patrol of the hallways and classroom. *See* email dated November 2, 2016 entitled, "Professional Conduct", Ex. 40.

203.    On November 9, 2016, Principal Christie emailed Superintendent Donald Conyers "writing to seek [his] advice, recommendation, and support with termination of service for Assistant Principal Simone Clarke." *See* email dated November 9, 2016, Ex. 41.

204.    In a text message from Sheila Hanley, retired principal, Ms. Hanley stated that Plaintiff did not receive mentorship contrary to Principal Christie's false representation and asked where the evidence was showing proof of support. Ms. Hanley also emailed Plaintiff and stated as a new AP, Plaintiff had not received a mentor or adequate support. *See* email and text messages from Sheila Hanley acknowledging Principal Christie not giving Plaintiff adequate support for her 2015 – 16 unsatisfactory rating, Ex. 9.

205.    On November 10, 2016, Principal Christie's DOE attorney emailed CCHR to memorialize their conversation extending the DOE's deadline to submit a Verified Answer to Plaintiff's CCHR Complaint to the December 1. *See* email dated November 10, 2016 entitled, "Ya Li" (CCHR), Ex. 21.

206.    On November 22, 2016, Principal Christie reprimanded Plaintiff in an email for miscommunicating a PD scheduled event. In the email, Plaintiff stated that she apologized profusely to Principal Christie for not informing her of the scheduled PD and took full responsibility for the mistake. Plaintiff stated that Principal Christie yelled, belittled her in front of staff members, and went on a tirade, blaming Plaintiff for all the confusion in Principal Christie's school and stating that moving forward, Principal Christie would inform the staff to speak directly to Principal Christie on every matter concerning the school, further isolating and blackballing the Plaintiff. *See* email dated November 22, 2016 entitled, "Professional Development", Ex. 42.

207.    On November 23, 2016, Plaintiff received an email from Principal Christie wherein Principal Christie accused Plaintiff of falsifying information and coercing a student. In the email, Plaintiff stated that she reviewed an End of the Day Report regarding a special education student who was said to be suspended, and inquired into why the student's name

was not on the report, and if the student was suspended. The email further stated that Plaintiff spoke with the student and  the student stated that his parent was upset about the matter. Principal Christie was copied on the corresponding email and became irate with Plaintiff's inquiries. Principal Christie accused Plaintiff of coercing the  student into writing a false statement and stated that Plaintiff falsified documents. In a meeting later that day, with AP Rivera, Dean Saunds, Principal Christie, and Plaintiff, Principal Christie ridiculed the Plaintiff for defending the student's rights. *See* email dated November 23, 2016, entitled, "Shane Prince", and "12/1 meeting", Ex. 43.

208.    On December 1, 2016, Plaintiff received a Disciplinary Conference Letter for December 5, 2016, to discuss unprofessionalism in coercing a student, not following protocol, and falsifying information. *See* email dated December 7, 2016 entitled Disciplinary Conference, Ex. 44.

209.    On December 1, 2016, Principal Christie's DOE attorney emailed CCHR to receive an additional extension until December 16, 2016, to answer Plaintiff's CCHR Complaint. *See* email entitled, "Ya Li"  (CCHR), Ex. 21.

210.    On December 6, 2016, Plaintiff received from Principal Christie a Disciplinary Conference Letter for December 9, 2016, to discuss Plaintiff's poor job performance and falsifying about Plaintiff's whereabouts. *See* email dated December 7, 2016 entitled, Disciplinary Conference,  Ex. 44.

211.    On December 16, 2016, Plaintiff emailed her CSA union representative, Eleanor Andrews, to discuss Principal Christie making up fictitious things relating to Plaintiff's responsibilities and requested advice and a meeting with Principal Christie to address the falsehood. *See* email dated December 16, 2016  entitled, "Important",  Ex. 45.

212.     On or about December 16, 2016, Principal Christie through her attorney submitted her Verified Answer to NYC Commission on Human Rights Complaint by Plaintiff. *See* NYC Commission on Human Rights Verified Answer, Ex. 46.

213.     On December 23, 2016, eight days after officially responding to Plaintiff's NYC Commission on Human Rights Complaint, Principal Christie gave Plaintiff a notice of discontinuance letter seeking termination of her employment. *See* Notice of Discontinuance Letter, Ex. 48.

214.     On January 19, 2017, Principal Christie emailed Superintendent Conyers to accuse Plaintiff of continuously refusing to execute any task; stating that Plaintiff's day consists of her sitting at the computer in her office attending to matters unrelated to DOE business, and making personal phone calls on her cellphone as well as the office landline. Principal Christie further wrote that Plaintiff covers the glass to the door where she is completely closed off from the school community, and that Plaintiff refused to respond to phone calls or radio calls. She also wrote that Plaintiff has become extremely belligerent and antagonistic especially towards her secretary, Ms. Dana Doucet, and expressed concerns about being out of the building at an all-day PD and states that Principal Christie asked Principal George to supervise Plaintiff for the day ensuring that Plaintiff supported him with campus-wide supervision. Principal Christie further wrote that if Plaintiff needed access to a computer, there were available units in the main office; however it is quite unlikely that Plaintiff would be needing the use of a computer as Plaintiff blatantly refused to comply with any directives or complete any given assignments. *See* email dated January 20, 2017, Ex. 50.

215.     Principal Christie also wrote that during the January 19 Disciplinary Conference, CSA representative Ms. Andrews asked Plaintiff if she had begun organizing her personal items; Principal Christie wrote that as Plaintiff has in the past, she brought her husband to the building on a Saturday (without permission). Principal Christie also wrote that Plaintiff might once again bring her husband to the school and as Plaintiff was a staff member, school safety might allow Plaintiff to escort her husband, as they did in the past, to the floor.  Principal Christie asked Superintendent Conyers to advise as to how to proceed so that Plaintiff does not bring anyone to the floor with her.  Principal Christie also wrote that Plaintiff does not work Saturday School, and asked if Plaintiff was allowed in the building on a Saturday?.  *See* email dated January 20, 2017, Ex. 50.

216.     Plaintiff's husband was diagnosed disabled in and around October 2013. After Plaintiff's husband fell off a two-story scaffold he received severe damage to his back and left hip. Plaintiff stated that she was never at the building on a Saturday with her husband, Plaintiff also refuted Principal Christie's accusations of Plaintiff continuously refusing to execute any task, sitting at the computer in her office attending to matters unrelated to DOE business, and making personal phone calls on her cellphone as well as the office landline as blatant fabrications.  *See* Clarke Declaration Ex. 8.

217.     On January 23, 2017, four months after receiving Plaintiff's NYC Commission on Human Rights Complaint, Plaintiff was discontinued and terminated from her employment.  *See* Final Discontinuance Letter dated January 23, 2017, Ex. 51.

218.     Principal Christie has a history of blatantly retaliating against subordinates who accuse her of retaliation in protected forums, with excessive letters to file, making up

56

disciplinary and other performance issues, and terminating their employment. *See* Mary Modica Declaration, Ex. 18.

219.     Other staff members who were at the school, including Ms. Huggins and ATR Assistant Principal Rafael Cruz, observed Principal Christie discriminate or retaliate against Plaintiff while working with them at the school. *See* Huggins text messages, Ex. 53, Cruz email, Ex. 54.