18 Civ. 01850 (NGG) (JO)

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

SIMONE CLARKE,

                              Plaintiff,

-against-

THE NEW YORK CITY DEPARTMENT OF EDUCATION; CLAUDETTE CHRISTIE, PRINCIPAL OF WATCH HIGH SCHOOL,

                              Defendants.

**DEFENDANTS' REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**GEORGIA PESTANA**

*Acting Corporation Counsel of the City of New York*
Attorney for Defendants
100 Church Street, Room 2-140
New York, New York 10007-2601

*Of Counsel*: Cassandra N. Branch
Tel.: (212) 356-4074

Matter No.: 2018-024415

# TABLE OF CONTENTS

                                                                  **Page**

**PRELIMINARY STATEMENT** ................................................................................... - 1 -

**ARGUMENT** ................................................................................................................. - 2 -

       POINT I .................................................................................................................. - 2 -

              PORTIONS OF PLAINTIFF'S OPPOSITION
              MUST BE STRICKEN. .................................................................................. - 2 -

       POINT II ................................................................................................................ - 9 -

              PLAINTIFF FAILS TO ESTABLISH A
              DISCRIMINATION OR HOSTILE WORK
              ENVIRONMENT CLAIM. ............................................................................. - 9 -

       POINT III .............................................................................................................. - 14 -

              PLAINTIFF FAILS TO ESTABLISH A
              RETALIATION CLAIM UNDER ANY LAW. .................................. - 14 -

**CONCLUSION** ............................................................................................................ - 15 -

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*Agence France Presse v. Morel*,
 293 F.R.D. 682 (S.D.N.Y. Oct. 24, 2013) ................................................................. 2

*Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*,
 04 Civ. 1798 (CPS), 2009 U.S. Dist. LEXIS 47986 (E.D.N.Y. June 9, 2009) ............ 5, 7

*EEOC v. Bloomberg L.P.*,
 967 F. Supp. 2d 816 (S.D.N.Y. 2013) ....................................................................... 15

*Brown v. Coach Stores*,
 163 F.3d 706 (2d Cir. 1998) ..................................................................................... 13

*Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*,
 769 F.2d 919 (2d Cir. 1985) ..................................................................................... 6

*Danzer v. Norden Sys.*,
 151 F.3d 50 (2d Cir. 1998) ....................................................................................... 13

*Dauer v. Verizon Commun's*,
 613 F. Supp. 2d 446 (S.D.N.Y. 2009) ...................................................................... 11

*Ebewo v. Martinez*,
 309 F. Supp. 2d 600 (S.D.N.Y. 2004) ...................................................................... 2

*El Sayed v. Hilton Hotels*,
 627 F.3d 931 (2d Cir. 2010) ..................................................................................... 15

*Galabaya v. New York City Bd. of Educ.*,
 202 F.3d 636 (2d Cir. 2000) ..................................................................................... 11

*Harris v. Forklift Sys.*,
 510 U.S. 17 (1993) ................................................................................................... 13

*Hollander v. Am. Cyanamid*,
 172 F.3d 192 (2d Cir. 1999) ..................................................................................... 4

*Lawrence v. City of New York*,
 15 Civ. 8947 (WHP), 2018 U.S. Dist. LEXIS 126010 (S.D.N.Y. July 27,
 2018) ....................................................................................................................... 8

*Mazur v. New York City Dep't of Educ.*,
 53 F. Supp. 3d 618 (S.D.N.Y. 2014) ........................................................................ 15

*Miller v. City of New York*,
 15 Civ. 7563 (WHP), 2018 U.S. Dist. LEXIS 73238 (S.D.N.Y. May 1, 2018) ........................4

*Perkins v. Mem. Sloane-Kettering Cancer Ctr.*,
 02 Civ. 6493 (RJH), 2005 U.S. Dist. LEXIS 22541 (S.D.N.Y. Sept. 30, 2005) ...................6, 9

*Preuss v. Kolmar Labs., Inc.*,
 970 F. Supp.2d 171 (S.D.N.Y. 2013)............................................................................................2

*Sotomayor v. City of New York*,
 862 F. Supp. 2d 226 (E.D.N.Y. 2012) ......................................................................................11

**State Cases**

*Williams v. New York City Hous. Auth.*,
 61 A.D.3d 62 (1st Dep't 2009) .................................................................................................14

**Federal Rules**

Fed. R. Civ. P 5.2.............................................................................................................................9

Fed. R. Civ. P. 37........................................................................................................................2, 4

Fed. R. Civ. P. 56......................................................................................................................4, 10

Fed. R. Evid. 801 ............................................................................................................................6

Fed. R. Evid. 106 ............................................................................................................................7

Fed. R. Civ. P. 26..........................................................................................................2, 3, 4, 5, 8

E.D.N.Y. Local Rule 56.1.........................................................................................................1, 10

## PRELIMINARY STATEMENT

In opposition to defendants' motion for summary judgment, plaintiff improperly relies on a wealth of inadmissible evidence that includes an affidavit from an alleged witness who was never disclosed to defendants as required by Rule 26 (a)(1)(A)(i), as well as various photographs, text messages, and audio recordings and audio recording transcripts that were not produced during discovery or at any time prior to service of Plaintiff's Opposition.[1] Plaintiff otherwise fails to raise a genuine issue of material fact as to any of plaintiff's discrimination and retaliation claims, fails to provide supporting record citations, and continues to rely on rank speculation in an attempt to establish a *prima facie* case. For the reasons set forth below and in defendants' moving papers, portions of Plaintiff's Opposition must be stricken from the record and the Complaint must be dismissed in its entirety.

## STATEMENT OF FACTS

For a Statement of Facts, the Court is respectfully referred to the Branch Declaration submitted in support of Defendants initial motion ("Branch Dec."), Defendants' Memorandum of Law in Support of Their Motion for Summary Judgment ("Def.' Mot."), Defendants' Local Rule 56.1 Statement of Undisputed Material Facts ("Def. SoF"), and Defendants' Reply Declaration in Further Support of Their Motion for Summary Judgment ("Branch Reply Dec.").

---

[1] Defendants' letter motion dated September 25, 2019, indicated that Plaintiff's Opposition included exhibits containing the unredacted confidential information of DOE students. *See* ECF Dkt. Entry No. 36. Plaintiff has since re-served defendants with the properly redacted exhibits.

# ARGUMENT

## POINT I

### PORTIONS OF PLAINTIFF'S OPPOSITION MUST BE STRICKEN.

Plaintiff's Opposition relies on information and documents that plaintiff failed to produce to defendants during discovery in this matter. As discussed below, such submissions are inadmissible and may not be considered by this Court in deciding Defendants' Motion.

#### A. Affidavit By Undisclosed Non-Party Witness Mary Modica

Rule 26(a)(1)(A)(i) of the Federal Rule of Civil Procedure ("FRCP") requires that a party provide, "the name and, if known, the address and telephone number of each individual likely to have discoverable information—along with the subjects of that information—that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." *See* Fed. R. Civ. P. 26(a)(1)(A)(i). The disclosure obligations imposed by Rule 26 are designed to prevent parties from "sandbagging" an opposing party with new evidence. *See Ebewo v. Martinez*, 309 F. Supp. 2d 600, 607 (S.D.N.Y. 2004); *see also Agence France Presse v. Morel*, 10 Civ. 2730 (AJN), 2013 U.S. Dist. LEXIS 154678 at **4(S.D.N.Y. Oct. 24, 2013) (citing *Ebewo*, 309 F. Supp. 2d at 607). FRCP Rule 37(c)(1) provides that any "party [that] fails to provide information or identify a witness as required by Rule 26(a) . . . is not allowed to use that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1); *see also Preuss v. Kolmar Labs., Inc.*, 970 F. Supp.2d 171, 174-175 (S.D.N.Y. 2013).

In opposition to defendants' motion for summary judgment, Plaintiff's Opposition submits the affidavit of Mary Modica, dated September 12, 2019. *See generally*, Declaration of Mary Modica ("Modica Dec."), a copy of which is annexed to the Declaration of Bryan D. Glass

in Opposition to Defendants' Motion for Summary Judgment ("Glass Dec.") as Exhibit "18." Plaintiff wholly failed to provide any information regarding Ms. Modica in her Rule 26(a) disclosures dated July 12, 2018; failed to supplement or amend her Rule 26(a) disclosures to add Ms. Modica as a witness; and failed to identify Ms. Modica in <u>any</u> subsequent discovery response. *See* Plaintiff's 26(a) Disclosures, and Plaintiff's Discovery Reponses, Branch Reply Dec. Exs. "A," and "B," respectively. Presently, defendants are <u>still</u> unaware of any involvement Ms. Modica may have had with plaintiff or the events underlying the Complaint based on Ms. Modica's testimony. In her declaration, Ms. Modica contends that she was employed as a teacher at WATCH HS from September 2017 until defendant Christie discontinued her employment in July 2019, allegedly after Ms. Modica filed discrimination complaints about defendant Christie. *See* Modica Dec. ¶ "1," Glass Dec., Ex. "18." Ms. Modica further contends that defendant Christie retaliated against her for filing discrimination complaints, including issuing Ms. Modica multiple counseling and disciplinary letters. *See id.* ¶¶ "3," "5." Ms. Modica does not allege that she was ever pregnant while supervised by defendant Christie, that she experienced pregnancy discrimination, or that she personally knew any details of the events underlying the Complaint. Notably, Ms. Modica's September 12, 2019 declaration states that she did not begin her employment at WATCH HS until September 2017, more than eight (8) months after plaintiff's termination, and <u>admits</u> that Ms. Modica did not meet plaintiff until "recently." *See id.* ¶¶ "1," "9."

Plaintiff's failure to previously disclose Ms. Modica's identity and testimony amounts to sandbagging, is a highly improper and transparent attempt to manufacture a triable issue of fact. Allowing this declaration to be used by plaintiff more than eight (8) months after the close of discovery would result in prejudice to the defendants, as they have been denied the

opportunity to seek any discovery from, or take the deposition of, Ms. Modica.[2] *See e.g.,* Plaintiff's 26(a) Disclosures at 1-2, Branch Reply Dec., Ex. "A." *See* Fed. R. Civ. P. 37(c)(1); *Miller v. City of New York*, 15 Civ. 7563 (WHP), 2018 U.S. Dist. LEXIS 73238 at *112-113 (S.D.N.Y. May 1, 2018), *aff'd sub nom*, *Bloise v. City of New York*, 768 Fed. App'x 103, 2019 U.S. App. LEXIS 15688 (2d Cir. May 28, 2019). Further, Ms. Modica's vague testimony about unrelated discrimination by defendant Christie in 2018 is completely irrelevant to plaintiff's pregnancy discrimination and retaliation claims stemming from alleged mistreatment in 2015 and 2016, long before Ms. Modica and plaintiff knew of each other. Accordingly, Ms. Modica's declaration must be stricken. *See* Fed. R. Civ. P. 56(e) ("supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein"); *see, e.g.*, *Hollander v. Am. Cyanamid*, 172 F.3d 192, 198 (2d Cir. 1999).

**B.    Documents That Plaintiff Failed to Produce During Discovery**

Plaintiff's Opposition relies on: (1) unauthenticated photos of plaintiff, allegedly in or around the time of her pregnancy; (2) copies of text messages between plaintiff and non-party witness Sheila Hanley; (3) copies of text messages between plaintiff and non-party witness Lori Huggins; and (4) two (2) transcripts of audio recordings between plaintiff, defendant Christie, and non-party witness "Lindsay Ramos."[3] *See* Glass Dec. Exs. "5," "9,"–"10," "12," and "53." None of these materials were identified in plaintiff's Rule 26 disclosures nor were they produced to defendants prior to the service of Plaintiff's Opposition. Further, plaintiff

---

[2] Discovery in this matter closed on or about January 31, 2019.

[3] Plaintiff's 26(a) Disclosures only identified "Elizabeth Ramos" as an individual likely to have discoverable information in this matter. The name Lindsay Ramos was not found in any subsequent discovery productions by plaintiff. *See* Plaintiff's 26(a) Disclosures at 1-2, Branch Reply Dec., Ex. "A."

failed to disclose Ms. Huggins as an individual likely to have discoverable information, pursuant to FRCP Rule 26(a)(1)(A)(i). *See* Plaintiff's 26(a) Disclosures, Branch Reply Dec., Ex. "A."

A. **Unauthenticated Photos of Plaintiff**

Exhibit "5" to Plaintiff's Opposition consists of six (6) undated photos of plaintiff with various unnamed students. *See* Glass Dec. Ex. "5." On each photo, unidentified handwriting indicates either "November 2015" or "December 23, 2015" as the date of each photo. *See id.* As these photographs were never produced to defendants, they must be deemed inadmissible. *See, e.g., Am. Friends of Yeshivat Ohr Yerushalayim, Inc. v. United States*, 04 Civ. 1798 (CPS), 2009 U.S. Dist. LEXIS 47986, at *53 (E.D.N.Y. June 9, 2009) (sanctioning plaintiff and striking ledger and tuition checks submitted by plaintiff in opposition to government's motion for summary judgment because they were not produced during discovery). Even if these photographs had been properly produced during discovery, however, plaintiff's inclusion of those photos in opposition to Defendants' Motion amounts to nothing more than an improper and weak attempt to influence the Court's opinion as to the timing of defendant Christie's alleged discrimination against plaintiff. The parties are in dispute as to whether defendant Christie learned of plaintiff's pregnancy in or around December 2015 or February 2016 when she requested an exemption for working the mandatory Summer 2016 Session. *See* Def. SoF ¶¶ "46,"–"47,"; Pl. SoF ¶ "47." While plaintiff is entitled to establish her case with documentary evidence of her choosing, it is improper for plaintiff to attempt to use these suspiciously dated photographs to have this Court generate its own opinion of the timeline of events in this matter. Were these photographs produced at any time during discovery, defendants would have been able to inquire about who took the photographs, and by what method the photographs were taken. If these photographs were taken digitally, defendants would have requested the electronic versions and/or native format of these photographs to examine the metadata of these photographs

to determine when they were actually taken. By failing to produce these photographs during discovery, and only producing them in opposition to Defendants' Motion, plaintiff has unfairly deprived defendants of the opportunity to review these photographs, inquire about their authenticity, and rebut the presumptions for which they are offered. Therefore, allowing plaintiff to introduce these photographs for the first time in opposition to summary judgment constitutes unfair prejudice to defendants.

Finally, these photos do not resolve any issue of fact in the parties' dispute, and plaintiff's declaration explaining these photos is hardly sufficient to establish that defendant Christie should have known about her pregnancy.[4] *See* Declaration of Plaintiff Simone Clarke, Glass Dec. Ex. "8." Accordingly, Exhibit "5" should be stricken from Plaintiff's Opposition.

**B.      Plaintiff's Text Messages with Non-Party Witnesses**

Exhibits "9," and "53," to Plaintiff's Opposition are copies of text messages between plaintiff and non-party witnesses Sheila Hanley and Lori Huggins, respectively. *See* Glass Dec. Exs. "9," and "53." The text messages of plaintiff's conversations with Ms. Hanley and Ms. Huggins are inadmissible, as they are not authenticated and contain hearsay statements. *See* Fed. R. Evid. 801; *see, e.g.*, *Burlington Coat Factory Warehouse Corp. v. Esprit de Corp.*, 769 F.2d 919 (2d Cir. 1985) (noting that it is well-settled that a party "cannot rely on inadmissible hearsay in opposing a motion for summary judgment); *Perkins v. Mem. Sloane-Kettering Cancer Ctr.*, 02 Civ. 6493 (RJH), 2005 U.S. Dist. LEXIS 22541, at *44 (S.D.N.Y. Sep. 30, 2005) (striking unauthenticated messages between plaintiff and witness from plaintiff's opposition to summary judgment); *Am. Friends of Yeshivat Ohr Yerushalayim, Inc.*, 2009 U.S. Dist. LEXIS 47986, at *53.

---

[4] Notably, plaintiff has never before claimed that defendant Christie should have known about her pregnancy by a certain point in time, rather than that she simply informed defendant Christie of her pregnancy.

As noted above, plaintiff failed to disclose Ms. Huggins as an individual with possibly discoverable information in this matter. The text message between plaintiff and Ms. Huggins is not dated, although the "9/11/2019" gives some indication as to when the message was created. The text message allegedly from Ms. Huggins begins "To whom is [sic] may concern," and goes on to state "I am confirming that Ms. Clarke announced her pregnancy in December 21, 2015. From this point forward the staff were made aware of her pregnancy." *See* Lori Huggins Text Messages, Glass Dec., Ex. "53." Not only is this alleged text message unauthenticated, it is an unbelievable and blatant attempt by plaintiff to manufacture a record after the fact. If plaintiff thought Ms. Huggins' statement to be of such value, she would have, and should have, disclosed her identity to defendants during discovery.

As to plaintiff's conversations with Ms. Hanley, plaintiff disclosed Ms. Hanley's identity to defendants in her initial disclosures, but failed to provide the entirety of the copies of their relevant communications. Only a shortened version of the text conversation in Exhibit "9," was provided to defendants. *See* Sheila Hanley Text Messages, Branch Reply Dec. Ex. "C." The copy annexed to Plaintiff's Opposition includes two (2) additional pages at the beginning, as well as approximately seven (7) additional pages at the end. *See* Glass Dec. Ex. "9." Plaintiff's production of this truncated communication denied defendants of the opportunity to request the full conversation. *See* Fed. R. Evid. Rule 106. Thus, Exhibit "53," should be stricken from Plaintiff's Opposition in its entirety and the pages in Exhibit "9," not produced to defendants should be stricken.

C.  **Audio Recordings Provided by Plaintiff**

Pursuant to FRCP Rule 26(g), "an attorney's signature on a discovery response or objection certifies that after reasonable inquiry, the production is (1) complete and correct as of the time it is made; (2) consistent with existing law; (3) not interposed for any improper purpose;

and (4) not unduly burdensome." *See Lawrence v. City of New York*, 15 Civ. 8947 (WHP), 2018 U.S. Dist. LEXIS 126010 at *12 (S.D.N.Y. July 27, 2018) (citing Fed. R. Civ. P. 26(g)) (internal quotations omitted). Violation "without substantial justification" requires a court to "impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both." *Id*.

Plaintiff's Opposition Exhibits "10," and "12," are transcripts of audio recordings taken by plaintiff of her conversations with defendant Christie and non-party witness "Lindsay,"[5] respectively. After engaging in a thorough review of plaintiff's media production to defendants, it is abundantly clear that either plaintiff or someone acting on her behalf edited the audio recordings produced to defendants during discovery. More specifically, it appears that the audio recordings plaintiff produced to defendants during discovery were significantly cut short. Defendants had plaintiff's audio recordings transcribed during discovery, and the transcripts attached to Plaintiff's Opposition includes conversation not appearing in the audio recordings provided to defendants. *See* Branch Reply Dec. Exs. "D,"– "G." In plaintiff's recorded discussion with defendant Christie, the conversation appearing on pages "2," "10,"–"11," and "14,"–"18" of the transcript annexed to Plaintiff's Opposition are entirely missing from the recording provided to defendants. *See* Branch Reply Dec. Ex. "E." Defendants' transcript further includes conversation regarding restroom use on page 17 that does not appear anywhere in the audio that plaintiff provided or in the transcript annexed to Plaintiff's Opposition. *See id*.

As to the conversation between plaintiff and "Lindsay," the transcript annexed to Plaintiff's Opposition includes five (5) lines at the beginning, and six (6) lines at the end which were omitted from the shortened audio provided to defendants. *See* Glass Dec., Ex. "12," at 1-2; Branch Reply Dec. Exs. "F," – "G." Finally, both of the transcripts annexed to Plaintiff's

---

[5] Counsel's Declaration purports that this is the transcript of a recorded conversation with Lindsay Ramos, however defendants are unable to verify this.

Opposition are dated September 11, 2019, and were therefore created more than seven (7) months *after* the completion of discovery and the filing of defendants' summary judgment motion. *See* Glass Dec. Exs. "10," and "12." The Court should not allow plaintiff to ignore her discovery obligations and effectively fabricate a record to fit her preferred narrative in a transparent attempt to manufacture a triable issue of fact. Accordingly, given the significant issues with plaintiff's audio recordings, the entirety of plaintiff's Exhibit "10," should be stricken from Plaintiff's Opposition, and the specified portions of plaintiff's Exhibit "12" should be stricken. *See, e.g.*, *Perkins*, 2005 U.S. Dist. LEXIS 22541, at *44.

## POINT II

### PLAINTIFF FAILS TO ESTABLISH A DISCRIMINATION OR HOSTILE WORK ENVIRONMENT CLAIM.

**A.    Facts Undisputed by Plaintiff**

Plaintiff's Opposition does not dispute several facts, including that: plaintiff concealed the diagnosis on her sick note that revealed her pregnancy diagnosis; plaintiff had performance issues throughout her WATCH HS employment; plaintiff told Principal Christie that she had completed a professional development plan in October 2016 when she actually had not. *See* Pl. SoF ¶¶ "37," "76,"–"77," "91." Plaintiff also provides no record citations at all for defendants' assertions which she disputes in the following paragraphs of Plaintiff's Statement of Facts: ¶¶ "25,"–"31,"; "33,"–"34,"; "40,"–"44,"; "46,"; "49,"; "52," –"78,"; "80,"; "83,"; and "85,"–"127." The Federal Rules and Local Rule 56.1 requires plaintiff to respond to defendants' Statement of Undisputed Facts with record citations or show that each fact asserted by defendants was unsupported. *See* Fed. R. Civ. P. 56(c); Local Civil Rule 56.1(b), (d). As plaintiff failed to properly controvert the facts defendants proffered, the Court may consider these facts undisputed. *See* Fed. R. Civ. P. 56(e).

Accordingly, the Court should deem all of these cited facts to be undisputed.

**B.      Discrimination**

Plaintiff's Opposition fails to create a triable issue of fact as to any of plaintiff's discrimination claims. Here, the Complaint should be dismissed because plaintiff has not established a *prima facie* case of pregnancy discrimination. Plaintiff did not experience any adverse employment actions, save for termination, and to the extent that occurred, the record includes a host of legitimate non-discriminatory business reasons for defendants' actions.

In this matter, plaintiff received criticism from Principal Christie about: being late, either missing work or submitting incorrect work; being required to clock in using a time-punch card; failing to assist in completion of legally-mandated Individualized Education Plans ("IEPs") and ensure that they were in compliance with federal laws applicable to Special Education students; failing to supervise teachers assigned projects by Principal Christie; not being responsive to Principal Christie's communications; and behaving unprofessionally during meetings with Principal Christie by raising her voice and making statements that appeared threatening in nature. *See* Def. SoF ¶¶ "24,"–"29," "42," "56,"–"59," "63." Plaintiff received seven (7) disciplinary letters in the less than two (2) years that she was assigned to WATCH HS. *See* Def. Exs. "V,"–"X," "BB," "DD,"–"FF." None of the employment actions that plaintiff experienced, with the exception of her termination, were adverse actions. *See e.g.*, *Galabaya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000).

The Second Circuit has repeatedly held that negative feedback, without more, does not constitute an adverse employment action. *See, e.g.*, *Sotomayor v. City of New York*, 862 F. Supp. 2d 226, 254-255 (E.D.N.Y. 2012), *aff'd*, 713 F.3d 163 (2d Cir. 2013); *Dauer v. Verizon Commun's*, 613 F. Supp. 2d 446, 461 (S.D.N.Y. 2009) (citing Second Circuit decisions). While plaintiff contends that her 2016 U-rating should be considered an adverse employment action

because U-rated teachers are not permitted to work per session shifts, plaintiff does not argue that she wanted, or tried, to obtain per session work. *See* Pl. Opp. at 6 (citing *Herling v. New York City Dep't of Educ.*, 13 Civ. 5287 (JG)(VVP), 2015 U.S. Dist. LEXIS 120770, at *1 (E.D.N.Y. Sep. 10, 2015)) ("[n]ot being assigned overtime can result in a material loss of pay and may be considered an adverse act") (internal citations omitted). The September 16, 2016 email annexed to Plaintiff's Opposition does not concern any per session request by plaintiff; rather a DOE employee asked defendant Christie whether plaintiff could cover a per session shift posted by defendant Christie. *See* Email dated September 16, 2016, Glass Dec., Ex. "55," at 1. Further, Principal Christie explicitly stated in that September 16, 2016 email that plaintiff could not fill the posted per session assignment because she did "not hold a valid content pedagogical license." *See id.* Thus, under these circumstances, plaintiff cannot claim that her U-rating was an adverse employment action.[6]

Even if plaintiff continues to propose that her multiple write-ups and instances of verbal discipline amounted to adverse employment actions, plaintiff provides no citation to any documents in the record supporting plaintiff's contention that "Principal Christie's demeanor towards [plaintiff] suddenly changed dramatically" after she learned of plaintiff's pregnancy. *See* Pl. Opp. at 6. The record shows that plaintiff's performance issues began before December 2015, the period when she allegedly informed Principal Christie of her pregnancy, and these issues were consistent throughout the remainder of her DOE employment. *See* Def. SoF ¶¶ "26,"–"27," "29"; Def. Ex. "BB"; Def. Ex. "N" at NYC_0001435, 1477, 1531, 1844. Plaintiff even admitted to her shortcomings as an administrator. *See* Def. SoF ¶¶ "66," "105." Contrary to Plaintiff's Opposition, the record shows that plaintiff did indeed receive assistance to address her

---

[6] Notably, plaintiff testified that she did not suffer payroll deductions while at DOE, even when she was late to work on numerous occasions. *See* Def. SoF ¶ "126"; Def. Ex. "F," at 22-24.

unsatisfactory performance, and was never told that she should "take [time] off" by defendant Christie because she was pregnant. *See* Def. SoF ¶¶ "49,"–"55"; Def. Ex. "C" ¶ "45"; Def. Ex. "S." *See also* Glass Dec. Ex. "9," at 9-10 (plaintiff noting various mentors she met with); Branch Reply Dec. Ex. "E," at 6 (defendant Christie advising plaintiff "I never told you to take off"). Finally, Plaintiff's Opposition provides no support for plaintiff's contention that Principal Christie engaged in discrimination against other pregnant employees. *See* Pl. Opp. at 9. Even if Principal Christie's testimony regarding former Assistant Principal Bucknor was relevant – which it is not – Principal Christie did not testify that she issued A.P. Bucknor or any other employee unsatisfactory ratings because she learned of their pregnancies. *See* Christie Dep. at 19-20, Glass Dec. Ex. "1."

As to plaintiff's "aiding and abetting" claim under the SHRL, Plaintiff's Opposition fails to point to any place in the record where plaintiff has contended that DOE worked in concert with Principal Christie to discriminate against her. *See* Pl. Opp. at 9. Contrary to plaintiff's arguments, the record shows that almost immediately after plaintiff filed a discrimination complaint with OEO, DOE conducted a thorough investigation, including interviews of plaintiff. *See* Def. SoF ¶ "97." Plaintiff's Opposition fails to raise a triable issue of fact as to whether plaintiff suffered any discrimination due to her pregnancy in violation of Title VII, the SHRL and CHRL, and those claims must be dismissed.

## C. Hostile Work Environment

Plaintiff's Opposition fails to establish that plaintiff experienced harassment so "severe and pervasive" that it changed the conditions of her workplace. *See Harris v. Forklift Sys.,* 510 U.S. 17, 21 (1993). Plaintiff premises the entirety of her hostile work environment claim on three (3) comments allegedly made by Principal Christie– that plaintiff was "pregnant and forgetful," "fat," and that she "did not like the fact that [Plaintiff] was leaning back in her

chair and rubbing her belly, gossiping." *See* Complaint, Def. Ex. "A" ¶¶ "30,"–"31," "44." Even if true, these isolated statements amount to nothing more than stray remarks that are insufficient to meet the "severe or pervasive" threshold. *See Brown v. Coach Stores*, 163 F.3d 706 (2d Cir. 1998); *Danzer v. Norden Sys.*, 151 F.3d 50, 56 (2d Cir. 1998). This is insufficient to establish a hostile work environment claim under the SHRL.

Plaintiff's hostile work environment claim fares no better under the CHRL, which requires still requires plaintiffs to establish a *prima facie* case by showing that they were treated "less well" than other employees based on gender. *See Williams v. New York City Hous. Auth.*, 61 A.D.3d 62, 78 (1st Dep't 2009). This burden is plaintiff's to meet, and Plaintiff's Opposition does not point to any record evidence supporting that male teachers or female teachers who were not pregnant and engaged in the same derelict conduct as plaintiff were not subject to discipline. The record establishes that other WATCH staff who had punctuality problems as plaintiff did were treated in the same manner as plaintiff. *See* Def. SoF ¶ "33"; Def. Ex. "P."

The record clearly shows that defendants had legitimate nondiscriminatory reasons for all of the alleged adverse actions plaintiff complains of, and Plaintiff's Opposition fails to establish that any of those reasons were a pretext for pregnancy discrimination. Starting in September, 2015, Principal Christie began addressing plaintiff's consistent failure to complete assignments on time, her failure to fulfill various duties, her sloppy and incompetent completion of various forms and documents, repeated lateness, and general lack of professionalism. *See* Def. SoF ¶ "26"; Def. Ex. "O," at NYC_0001435, 1477, 1531, 1844. Principal Christie frequently had to ask plaintiff to respond to her emails, and also to timely complete the tasks assigned to her. *See generally*, Def. Ex. "O." When Principal Christie advised plaintiff of inaccuracies in two (2) IEPs which plaintiff was responsible for reviewing and monitoring,

plaintiff admitted that she did not review the actual IEP documents before signing and submitting them to Christie for approval. *See* Def. SoF ¶ "89."

Plaintiff fails to address any of these glaring instances of poor performance, which are only bolstered by her own admissions that she failed to submit work on time and attend required meetings. *See* Def. Mot. at 16; Def. Ex. "F," at 20-21, 30-31; Def. Ex. "U." These admissions establish that plaintiff's discipline and termination were justified, and Plaintiff's Opposition does not deny these facts. Accordingly, plaintiff's discrimination and hostile work environment claims must be dismissed.

## POINT III

### PLAINTIFF FAILS TO ESTABLISH A RETALIATION CLAIM UNDER ANY LAW.

The record does not support any causal connection between plaintiff's protected activity and any of the employment actions that plaintiff experienced, adverse or otherwise. Plaintiff's Opposition dedicates four (4) pages to listing every event that plaintiff conceives to be retaliation, however plaintiff fails to produce a scintilla of evidence specifically linking any of those actions to the CHHR complaint that plaintiff filed on or about June 7, 2016. *See* Pl. Opp. at 13-17. As noted in Defendants' Motion, plaintiff had already received numerous warnings about her conduct and performance, including plaintiff's failure to create and/or review legally-mandated IEPs for Special Education students. *See* Def. Mot. at 19-20. Plaintiff also did not file her internal complaint with DOE's OEO until October 26, 2016, thus events occurring before that date also cannot serve as the basis for any retaliation claims. *See* Def. SoF ¶ "96," *see, e.g.*, *El Sayed v. Hilton Hotels*, 627 F.3d 931, 932-33 (2d Cir. 2010).

The documented pattern of poor performance by plaintiff severs the link between any protected activity that she engaged in and the retaliatory acts plaintiff claims to

have experienced. *See, e.g.*, *Mazur v. New York City Dep't of Educ.*, 53 F. Supp. 3d 618, 640 (S.D.N.Y. 2014). Plaintiff's retaliation claims fail similarly under the SHRL and CHRL, as Plaintiff's Opposition does not cite to any portion of the record "tending to show a causal connection between [his] action[s] opposing [defendants'] alleged discrimination and the alleged adverse actions." *EEOC v. Bloomberg L.P.*, 967 F. Supp. 2d 816, 862 (S.D.N.Y. 2013).

Based on these facts, no reasonable jury could find that plaintiff was retaliated against for filing a discrimination charge with the CCHR or engaging in any other protected activity. Accordingly, the Complaint's retaliation claims must be dismissed.

## CONCLUSION

For the above reasons and as set forth in defendants' moving papers, defendants respectfully request that their Motion for Summary Judgment be granted, that the Complaint be dismissed in its entirety, that the relief requested be denied in all respects, that judgment be entered for defendants, and that defendants be granted costs, fees, and disbursements together with such other and further relief as the Court deems just and proper.

Dated:     New York, New York
            October 18, 2019

                                            **GEORGIA PESTANA**
                                            Acting Corporation Counsel of the
                                              City of New York
                                            Attorney for Defendants
                                            100 Church Street, Room 2-140
                                            New York, New York 10007-2601
                                            (212) 356-4074
                                            cbranch@law.nyc.gov

                              By:    [ECF]        /S/_____
                                                    Cassandra N. Branch
                                                   Assistant Corporation Counsel